**Joseph Michael SCHRIMSHER,**
**Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 2004–SC–0544–MR.**

Supreme Court of Kentucky.

April 20, 2006.

Margaret Foley Case, Appeals Branch Manager, Department of Public Advocacy, Julie Namkin, Assistant Public Advocate, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, State Capitol, Michael Harned, Bryan D. Morrow, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

A McCracken Circuit Court jury convicted Appellant, Joseph Michael Schrimsher, of three counts of wanton assault in the first degree, KRS 508.010(1)(b), one count of wanton assault in the second degree, KRS 508.020(1)(c), and one count of criminal abuse in the first degree, KRS 508.100. He was sentenced to twenty years for each conviction of first-degree assault and ten years for the conviction of second-degree assault, to be served concurrently, and an additional ten years for the conviction of criminal abuse, to be served consecutively, for a total of thirty years in prison. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

On February 23, 2003, A.S., Appellant's six-month-old daughter, was presented to the emergency room at Western Baptist Hospital in Paducah, Kentucky, by her biological mother, Erica Porter, for examination of swelling on the back of the child's head. In addition to the swelling, A.S. had bruises and scratches on her face. A C.T. scan revealed that A.S. had multiple skull fractures on both sides of her head. She was transferred to Kosair Children's Hospital in Louisville, Kentucky, and hospital officials contacted the social services division of the Cabinet for Families and Children. Further examination of A.S. revealed that, in addition to five skull fractures, she had the following injuries (in varying stages of healing): several contusions or abrasions around her head, neck, and thigh, multiple rib fractures on both her left and right sides, fractures of the tibia and fibula of her right leg, and a lacerated liver. Additionally, she was in a state of severe malnutrition (the basis for the indictment and conviction of criminal abuse). Both Porter and Appellant, A.S.'s biological father and Porter's live-in boyfriend, were indicted for various degrees of assault or complicity to assault and criminal abuse.

Appellant now challenges his convictions, asserting five counts of reversible

error, *viz:* (1) failure to sever his trial from Porter's and improper redaction of Porter's out-of-court statements; (2) failure of the indictment and the jury instructions on assault to specify what conduct on his part caused A.S.'s injuries; (3) insufficiency of the evidence to support his convictions; (4) denial of Appellant's request to show the entirety of his videotaped police interrogation; and (5) failure to instruct the jury on assault under extreme emotional disturbance. Finding no error, we affirm.

## I. FAILURE TO SEVER.

■ Appellant argues that the trial court's denial of his motion to sever his trial from Porter's violated his Sixth Amendment right of confrontation. Because the Commonwealth intended to introduce out-of-court admissions made by Porter during a police interrogation that tended to incriminate Appellant, Appellant moved for a severance pursuant to RCr 9.16 or, alternatively, for a redaction of any of Porter's statements made during the interrogation that inculpated him. The Commonwealth recognized the potential confrontation problem and prepared a redacted transcript of Porter's statements. The trial court denied Appellant's motion to sever, but granted the motion to redact. Appellant claims that the Commonwealth's redacted transcript still contained statements incriminating him.

■ We review a trial court's ruling on a motion to sever for an abuse of discretion. *Foster v. Commonwealth,* 827 S.W.2d 670, 679–80 (Ky.1991); *Boggs v. Commonwealth,* 424 S.W.2d 806, 808 (Ky. 1966); *Smith v. Commonwealth,* 375 S.W.2d 819, 820 (Ky.1964). A criminal defendant is entitled to a severance only upon a showing, prior to trial, that joinder would be unduly prejudicial. RCr 9.16; *Humphrey v. Commonwealth,* 836 S.W.2d

865, 868 (Ky.1992). Appellant argues that denial of his motion to sever was unduly prejudicial because his right to confrontation was violated when the Commonwealth introduced admissions made by Porter during its case-in-chief without first calling Porter as a witness.

■ The Sixth Amendment to the United States Constitution guarantees a defendant in any prosecution the right to confront all witnesses against him. *Pointer v. Texas,* 380 U.S. 400, 400–401, 85 S.Ct. 1065, 1066, 13 L.Ed.2d 923 (1965). The introduction of a non-testifying co-defendant's admission that expressly implicates the defendant violates the defendant's right of confrontation. *Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968). However, a *Bruton* problem may be cured by an appropriate redaction of the co-defendant's confession, so long as "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987); *Barth v. Commonwealth,* 80 S.W.3d 390, 394 (Ky.2001).

[A] joint trial utilizing a properly redacted statement is appropriate where given the totality of the circumstances no substantial prejudice will result. It is appropriate where the statement does not provide details that point unerringly to the nonconfessing defendant. Indeed, although inappropriate, it is not reversible error where the proof against the nonconfessing codefendant is so overwhelming that no possible prejudice resulted, the "harmless beyond a reasonable doubt" standard that applies to constitutional error. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967).

*Cosby v. Commonwealth,* 776 S.W.2d 367, 370 (Ky.1989), *overruled on other grounds*

*by St. Clair v. Roark,* 10 S.W.3d 482, 487 (Ky.1999).

■■ A redaction that is facially valid may still amount to a Sixth Amendment violation if it can only be reasonably interpreted as inculpating the defendant. *Gray v. Maryland,* 523 U.S. 185, 188, 118 S.Ct. 1151, 1153, 140 L.Ed.2d 294 (1998); *Barth,* 80 S.W.3d at 395. However, the introduction of a redacted statement that improperly incriminates a co-defendant does not violate the Sixth Amendment if the declarant subsequently testifies and is available for cross-examination, even if the redacted statement is introduced prior to the declarant's testimony. *Nelson v. O'Neil,* 402 U.S. 622, 629–30, 91 S.Ct. 1723, 1727, 29 L.Ed.2d 222 (1971); *Davis v. Commonwealth,* 967 S.W.2d 574, 579 (Ky.1998).

In the case *sub judice,* Porter testified in her own defense and was cross-examined by Appellant's counsel. As such, we find no prejudice resulting from the trial court's denial of Appellant's motion to sever or the introduction of Porter's redacted statements.

## II. DUE PROCESS.

Appellant argues that the indictment charging him with four counts of assault in the first degree was insufficient under the Due Process Clause because it lacked adequate detail, thus did not give adequate notice regarding the conduct for which he was prosecuted. He also argues that the indictment and instructions lacked sufficient detail regarding his alleged criminal conduct, thus implicating the proscription against double jeopardy.

■ We note at the outset that any alleged error as to the indictment is unpreserved. The Commonwealth filed a bill of particulars in response to Appellant's motion for such. The record does not reflect any objection by Appellant to the sufficiency of the bill of particulars as filed. A party's failure to object to a bill of particulars renders that objection unpreserved for review. *Thomas v. Commonwealth,* 931 S.W.2d 446, 450 (Ky.1996); *Howard v. Commonwealth,* 554 S.W.2d 375, 378 (Ky. 1977); *see also Lane v. Commonwealth,* 956 S.W.2d 874, 876 (Ky.1997). Thus, we examine any alleged error with respect to the indictment for palpable error under RCr 10.26.

The indictment read as follows:

In the period between February 10, 2003 and February 25, 2003, in McCracken County, Kentucky, the defendant, Joseph Michael Schrimsher, committed the offense of first-degree assault, when under circumstances manifesting extreme indifference to the value of human life, he wantonly engaged in conduct which created a grave risk of death to [A.S.], an infant, and thereby caused multiple skull fractures to [A.S.]
. . . .

Each of the remaining three counts of assault in the first degree contained identical language, except for differences in the time periods alleged, and each described a different injury that was caused by Appellant's conduct, *i.e.,* multiple rib fractures, a lacerated liver, and two leg fractures.

### A. Adequate Notice.

■ Appellant argues that the indictment failed to give him notice of the crimes for which he was being prosecuted because none of the four charges were "anchored to four distinguishable acts." Specifically, he asserts that due process requires the indictment to set forth specific acts of conduct or "occurrences"—*e.g.,* striking the victim with his fist, striking the victim with an instrument, hurling the victim to the ground—in order to provide adequate notice.

■ The sufficiency of an indictment is governed by RCr 6.10(2), which states: "The indictment … shall contain, and shall be sufficient if it contains, a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged." "The indictment need not detail the essential elements of the charged crime, so long as it fairly informs the accused of the nature of the charged crime … and if it informs the accused of the specific offense with which he is charged and does not mislead him." *Ernst v. Commonwealth*, 160 S.W.3d 744, 752 (Ky.2005) (quotations omitted); *see also Parrish v. Commonwealth*, 121 S.W.3d 198, 202 (Ky. 2003); *Thomas v. Commonwealth*, 931 S.W.2d 446, 450 (Ky.1996); *Wylie v. Commonwealth*, 556 S.W.2d 1, 2–3 (Ky.1977); *Howard v. Commonwealth*, 554 S.W.2d 375, 377 (Ky.1977) ("[A]n indictment is sufficient if it fairly informs the defendant of the nature of the crime with which he is charged, without detailing the essential factual elements.") (citation and quotation omitted).

■ Assault is a "result offense," with bodily injury being the prohibited result. *Commonwealth v. Hager*, 41 S.W.3d 828, 831 (Ky.2001) (citing Robert G. Lawson, *Criminal Law Revision in Kentucky, Part I—Homicide and Assault*, 58 Ky. L.J. 242, 263 (1969–70)). The indictment at issue here apprised Appellant of the specific offense with which he was charged (first-degree assault), the nature of the charged crime (inflicting various injuries upon A.S.), and was not misleading. Contrary to Appellant's contention, these facts are sufficiently detailed to enable him to set forth a defense—*e.g.*, that A.S. was not injured or, if she was, that he did not inflict the injuries; or that someone else (Porter?) had access to A.S. and might have inflicted the injuries. To require the indictment to set forth the level of detail sought by Appellant would render an assault against an infant virtually incapable of indictment barring eye-witness testimony, as the victim in such a case cannot provide testimony on her own behalf. The indictment sufficiently notified Appellant of the nature of the offenses for which he was indicted.

### B. Double Jeopardy.

■ Under the Due Process Clause, the sufficiency of an indictment is measured by two criteria: first, that an indictment sufficiently apprise a defendant of the criminal conduct for which he is called to answer; and, second, that the indictment and instructions together provide adequate specificity that he may plead acquittal or conviction as a defense against any future indictment for the same conduct and that he not be punished multiple times in this action for the same offense. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *Valentine v. Konteh*, 395 F.3d 626, 634–35 (6th Cir.2005). Thus, Appellant argues that the lack of specificity in the indictment and instructions for assault not only gave him inadequate notice but also implicated the proscription against double jeopardy. For an indictment to be sufficient, "the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974) (citation and quotation omitted).

■ Appellant argues that the indictment and the jury instructions premised thereon violated the proscription against double jeopardy because they did not ex-

plicitly state which conduct by him caused the injuries that formed the bases for his convictions. The instruction for first-degree assault stated:

### INSTRUCTION NO. 3

#### (First–Degree Assault)

#### (Skull Fractures) [1]

You will find [Appellant] guilty of first-degree assault ... if, and only if[,] you believe from the evidence beyond a reasonable doubt all of the following:

A. That ... he *caused serious physical injury to [A.S.] by fracturing her skull.* AND

B. That in so doing, [Appellant] was wantonly engaging in conduct which created a grave risk of death to her and thereby injured [A.S.] under circumstances manifesting extreme indifference to the value of human life.

(Emphasis added.) The second-degree assault instruction included similar language regarding the criminal conduct for which Appellant was charged, *viz,* "he inflicted an injury on [A.S.] by fracturing her skull." Each series of instructions also contained an instruction requiring the jury, if guilt was found, to state in its verdict whether the injury resulted from an act that was separate from the acts that caused A.S.'s other injuries. Appellant argues that, because the instructions did not state what physical conduct on his part caused each injury, he would be unable to plead conviction as a defense against any possible future prosecution, thus removing his protection against double jeopardy. He relies upon *Valentine v. Konteh,* 395 F.3d 626 (6th Cir.2005), and *Miller v. Commonwealth,* 77 S.W.3d 566 (Ky.2002), in support of this proposition.

In *Valentine,* a defendant's conviction of twenty counts of child rape and twenty counts of felonious sexual penetration was reversed because each count of the indictment was a "carbon copy" of the others (for rape or sexual abuse), with no differentiation as to time, method, or any other distinguishable facts. The bill of particulars simply set forth the same information contained in the indictment, but named the family home as the location of all forty offenses. The only testimony at trial was the victim's estimate that the abuse occurred "twenty or fifteen times" coupled with a single description of "typical" abusive behavior, the only distinguishing facts being the victim's estimate of how many times the abuse occurred in one of four rooms in the home. *Valentine,* 395 F.3d at 633. In reversing the defendant's convictions because he was given inadequate notice of the charges against him, the Sixth Circuit Court of Appeals explained:

In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8–year–old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.... The jury could not have found Valentine guilty of Counts 1–5, but not Counts 6–20. Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents.

*Id.* at 632–33; *see also Miller,* 77 S.W.3d at 576 (finding reversible error where victim described facts surrounding one in-

---

1. Among the skull fractures, rib fractures, leg fractures, and lacerated liver, a different injury was stated for each count of assault (in varying degrees).

stance of rape and sodomy and estimated the number of times that conduct was repeated, but did not offer any additional information differentiating the first instances from the remaining 224 instances of rape or sodomy for which the defendant was convicted). Unlike *Valentine,* in the case *sub judice* each count of the indictment and the instruction on that count was distinguished from the others by a statement of the type of injury caused by each assault, *i.e.,* fractured ribs, fractured leg, fractured skull, or lacerated liver. The evidence adduced at trial further distinguished each injury listed in the indictment or instructions by establishing different (though in some cases overlapping) time frames in which each injury occurred.[2]

A conviction of assault in the first, second, or fourth degree requires proof of a physical injury, serious or otherwise. *See* KRS 508.010–508.030. Therefore, Appellant could defend himself from double jeopardy in any future prosecution for causing the same physical injury to A.S. by pleading his conviction in the case *sub judice* and requiring the subsequent prosecution to establish a different physical injury or time frame of commission.

The court in *Valentine* noted that, when evaluating the sufficiency of a factually vague indictment, courts "must acknowledge the reality of situations where young child victims are involved." *Valentine,* 395 F.3d at 632. With no eyewitness to the criminal conduct except for one or both of the two co-defendants and the infant victim, the specificity in the indictment and instructions was adequate to avoid double jeopardy.

## III. SUFFICIENCY OF THE EVIDENCE.

Appellant argues in a similar vein that, because the Commonwealth did not prove what conduct on his part caused A.S.'s injuries, the evidence was insufficient to sustain his convictions of first- or second-degree assault.

An appellate court reviews a ruling on a motion for a directed verdict of acquittal to determine "whether, under the evidence viewed as a whole, it was clearly unreasonable for the jury to have found the defendant guilty." *Bray v. Commonwealth,* 177 S.W.3d 741, 746 (Ky.2005); *see also Beaty v. Commonwealth,* 125 S.W.3d 196, 203 (Ky.2003); *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky.1983). On a defendant's motion for a directed verdict, a trial court must draw all fair and reasonable inferences in the Commonwealth's favor. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). "The Commonwealth bears a burden of proof in establishing each element of a charged crime, else a motion for a directed verdict by the defendant must be properly entertained." *Williams v. Commonwealth,* 721 S.W.2d 710, 712 (Ky.1986).

### A. Conduct that Caused Injuries.

Appellant claims entitlement to a directed verdict for each count of assault because the Commonwealth failed to present evidence that indicated which of A.S.'s injuries was caused by Appellant's conduct, which conduct caused which injury, and additionally whether the injuries were caused by four separate acts rather than one. The Commonwealth responded that Dr. Ralston, an Assistant Medical Examiner, testified to four potential time frames, possibly overlapping but possibly distinct,

**2.** Medical testimony established windows of time in which each injury occurred based on the various stages of healing.

in which each injury could have been sustained, then the Commonwealth recited the list of instances of conduct from which a jury could reasonably find guilt. The judge overruled Appellant's motion and stated that the "separate acts" jury instructions [3] served to ensure that the jury would determine whether there was evidence to support each count of assault.

The Commonwealth may prove guilt by circumstantial evidence. *Varble v. Commonwealth,* 125 S.W.3d 246, 254–55 (Ky.2004); *Blades v. Commonwealth,* 957 S.W.2d 246, 250 (Ky.1997). Circumstantial evidence is evidence that makes the existence of a relevant fact "more likely than not." *Timmons v. Commonwealth,* 555 S.W.2d 234, 237–38 (Ky.1977). The test of the sufficiency of the evidence on a motion for a directed verdict is the same for circumstantial evidence as for direct evidence. *Davis v. Commonwealth,* 795 S.W.2d 942, 945 (Ky.1990); *Sawhill,* 660 S.W.2d at 4.

The jury heard testimony regarding admissions by Appellant that provided direct evidence of different abusive acts he perpetrated against A.S., *e.g.,* that he threw A.S. to the floor on one occasion, causing blood to come out of her mouth; that he would "torture" A.S. at times; that he "jerks" A.S. around; that he hit A.S. in the mouth hard enough to draw blood on more than one occasion; that he kicked a car seat while A.S. was strapped into it; that on occasion he spanked A.S. "too hard." Furthermore, Porter provided direct and circumstantial evidence of the same, *e.g.,* that she "knew" Appellant spanked A.S. with a belt; that she discovered Appellant had wrapped A.S. in a blanket so tightly that A.S. turned purple; that Porter heard Appellant smacking A.S. behind closed doors; that she had come home on multiple occasions to find blood stains on the carpet; that she would discover knots or bruises on A.S. The jury also heard testimony by Dr. Ralston that a C.T. scan of A.S. revealed that, within the fourteen days prior to her presentation to the hospital, A.S. had sustained five skull fractures, several rib fractures, a lacerated liver, and two fractures in one leg. The Commonwealth proved multiple acts of assault and multiple injuries, some occurring in different time frames. The fact that it could not specifically prove which particular act caused which particular injury did not require a directed verdict of acquittal.

### B. Serious Physical Injury.

Appellant additionally argues that there was insufficient evidence to convict him of second-degree assault for causing the leg fractures because KRS 508.020 requires a "serious physical injury," and no reasonable jury could conclude that the leg fractures constituted a "serious physical injury" based on the testimony of Dr. Ralston.

The instruction at issue stated:

### INSTRUCTION NO. 16

### (Second Degree Assault)

### (Leg Fractures)

[Y]ou will find the Defendant guilty of Second–Degree Assault, under this instruction if, and only if you believe from the evidence beyond a reasonable doubt all of the following:

able doubt that the act of [fracturing/lacerating] A.S.'s [skull/ribs/leg/liver] was separate from the acts which caused A.S.'s [other injuries]."

---

**3.** After the instructions for first-, second-, and fourth-degree assault (with respect to each injury), the jury was given a "separate acts" instruction: "[y]ou will further state in your verdict whether you believe beyond a reason-

A. That in this county between January 25, 2003 and February 25, 2003, and before the finding of indictment herein, he inflicted an injury upon [A.S.] by fracturing her leg;

AND

B. That in so doing, the Defendant

1) intentionally *caused a serious physical injury to [A.S.];*

OR

2) *wantonly caused a serious physical injury to [A.S.]* by means of a dangerous instrument.

(Emphasis added.) The instructions defined "serious physical injury" pursuant to KRS 500.080(15) as a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." "KRS 500.080(15) sets a fairly strict *level* of proof which must be met by sufficient evidence of injury, medical and/or non-medical . . . ." *Prince v. Commonwealth,* 576 S.W.2d 244, 246 (Ky.App.1978). The seriousness of a physical injury depends upon the nature of the injury as well as the victim's characteristics. *See, e.g., Johnson v. Commonwealth,* 926 S.W.2d 463 (Ky. App.1996); *Cooper v. Commonwealth,* 569 S.W.2d 668 (Ky.1978). There was insufficient evidence to find that the leg fractures created a substantial risk of death (because Dr. Ralston testified that a leg fracture did not create a substantial risk of death) or caused a "serious and prolonged disfigurement" (because uncontroverted testimony established that the fracture was not visible to the naked eye and would heal without treatment).

However, there was sufficient evidence for the jury to conclude that the leg fractures caused a "prolonged impairment of health." Dr. Ralston testified that the injury would take up to two months to heal, that the fractures would have been very painful when sustained, and that the pain would have been exacerbated by A.S.'s concurrent state of malnutrition. Though an impairment of health must be "prolonged" in order to constitute a "serious physical injury" under KRS 500.080(15), *see, e.g., Parson v. Commonwealth,* 144 S.W.3d 775, 786 (Ky.2004), a reasonable jury could conclude that two months of healing time is "prolonged" with respect to the young life of a six-month-old infant.

Thus, viewing the evidence as a whole and drawing all inferences in favor of the Commonwealth, it was not "clearly unreasonable for the jury to have found the [Appellant] guilty." *Bray,* 177 S.W.3d at 746. The trial court properly overruled Appellant's motion for a directed verdict of acquittal. *Benham,* 816 S.W.2d at 187.

## IV. RULE OF COMPLETENESS.

 During its case-in-chief, the Commonwealth had Kentucky State Police trooper Tim Reed testify to statements made by Appellant and Porter during their separate interrogations. On cross-examination of Trooper Reed, Appellant sought to play the videotape of the entire police interrogation of Appellant—more than an hour of footage—in a purported effort to show how the Commonwealth had taken Appellant's statements out of context. The Commonwealth objected on the grounds that Appellant's videotaped statements were hearsay because, while admissible when offered by the Commonwealth under KRE 801A(b) (admissions of parties), they were inadmissible if offered by Appellant because Appellant was not a "party opponent" under the rule, and no other hearsay exception applied. Appellant responded that the "rule of completeness" required admission of the entirety of an out-of-court statement once an opposing

party has properly introduced a portion of that statement.

■ The trial court sustained the Commonwealth's objection on hearsay grounds and did not allow Appellant to play the videotape during his cross-examination of Reed. However, after both Appellant and Porter cross-examined Reed, the following colloquy occurred at the bench.

> Judge: I have been ... reviewing this KRE 106 completeness rule and comparing it with the hearsay exceptions .... Normally [a statement] is going to have to comply with hearsay and 106. But if you've got some statement that you think changes the meaning of a statement elicited by [the Commonwealth's] witness, the fair thing to do is, even if it's hearsay, to let you bring that in, because 106 ... in this case at least, would trump hearsay. But it's got to be closely related, and it's got to really affect how the jury would interpret that statement.

> Defense: Some of those things would be, you know, 'I didn't realize what I had done,' 'I didn't mean to hurt her,' you know, 'I love her,' 'I didn't mean to'—I mean, those things are in there also, which, without those things being in there, that doesn't give the true picture ....

> Judge: Okay. Well, if there's things such as that that you want to bring in through the witness, uh, you can do that, and we'll let you get—you know, re-question on that point. I think that's the fair way to go about it.
>
> ....
>
> Pros.: But you don't play the whole hour and fifteen minute tape.

Judge: No.

Thus, the trial court ruled that Appellant could cross-examine Reed from the transcript of the interrogation as to otherwise inadmissible hearsay statements made by Appellant during the interrogation, but the videotape could not be played for the jury in its entirety. Appellant did not object to the judge's ruling on this issue and was permitted on recross-examination to elicit statements surrounding those to which Reed testified on direct. Therefore, the error claimed on appeal was not preserved. Thus, we review the issue only for palpable error under RCr 10.26.

A trial court's ruling under KRE 106 (*i.e.*, the "rule of completeness") is discretionary. KRE 106 Drafters' Commentary 1989; *see also United States v. Mussaleen*, 35 F.3d 692, 696 (2d Cir.1994); *United States v. Maccini*, 721 F.2d 840, 844–45 (1st Cir.1983); Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 1.20[3][b], at 68–69 (4th ed.2003).

KRE 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement *which ought in fairness to be considered contemporaneously with it.*

(Emphasis added.) *See also Soto v. Commonwealth*, 139 S.W.3d 827, 865–66 (Ky. 2004); *Young v. Commonwealth*, 50 S.W.3d 148, 169 (Ky.2001); Lawson, *supra* § 1.20[3], at 67–71.

■ However, a party purporting to invoke KRE 106 for the admission of otherwise inadmissible hearsay statements may only do so to the extent that an opposing party's[4] introduction of an in-

---

4. KRE 106 explicitly states that an "adverse party" may require introduction; parties that are not adverse to one another may not avail themselves of the rule. *Young*, 50 S.W.3d at 169.

complete out-of-court statement would render the statement misleading or alter its perceived meaning. "The issue is whether 'the meaning of the included portion is altered by the excluded portion.'" *Young,* 50 S.W.3d at 169 (quoting *Commonwealth v. Collins,* 933 S.W.2d 811, 814 (Ky.1996)).

> The single purpose of considering the utterance as a whole is to be able to put a correct construction upon the part which the first party relies upon, and to avoid the danger of mistaking the effect of a fragment whose meaning is modified by a later or prior part . . . .

Lawson, *supra,* § 1.30[2], at 67 (quoting ·7 Wigmore, *Evidence in Trials at Common Law,* § 2550 (Chadbourne rev.1978)). Contrary to Appellant's position, KRE 106 does not "open the door" for introduction of the entire statement or make other portions thereof admissible for any reason once an opposing party has introduced a portion of it.

> The completeness doctrine is based upon the notion of fairness—namely, whether the meaning of the included portion is altered by the excluded portion. The objective of that doctrine is to prevent a misleading impression as a result of an incomplete reproduction of a statement. *This does not mean that by introducing a portion of a defendant's confession in which the defendant admits the commission of the criminal offense, the Commonwealth opens the door for the defendant to use the remainder of that out-of-court statement for the purpose of asserting a defense without subjecting it to cross-examination.*

*Gabow v. Commonwealth,* 34 S.W.3d 63, 69 n. 2 (Ky.2000) (citations and quotations omitted) (emphasis added). That is precisely what Appellant was endeavoring to do by attempting to introduce the exculpatory portions of the videotape, *i.e.,* intro-

duce his own exculpatory statements without subjecting them to cross-examination. (Appellant did not testify at trial.) His statements made during the interrogation were inadmissible hearsay—admissible when offered by the Commonwealth as admissions of a party opponent, KRE 801A(b), but inadmissible when offered by himself. *Id.* Accordingly, KRE 106 applied only to the extent that fairness required the introduction of additional portions of the interrogation to correct or guard against any likely misperception that would be created by an opponent's presentation of a fragmented version of the statement.

After reviewing KRE 106, the trial judge determined that it would be fair to allow cross examination from the transcript on subjects "closely related" if they "really effect how the jury would interpret that statement." Far from constituting an abuse of discretion, this was a proper enunciation and application of the rule. Appellant never explained to the trial court how putting Appellant's statements "in context" by playing the entire videotape would correct any likely misconception as to their meaning—or what misconception was likely at all. We rejected a similar argument in *Young v. Commonwealth,* 50 S.W.3d at 169, where a defendant sought to introduce six hours of a recorded interrogation to show how the statements introduced by the Commonwealth "evolved" throughout the interrogation. Though we ultimately held in *Young* that the alleged error was unpreserved, we explained that introduction was not necessary under KRE 106 because the meaning of the included portion was not altered by the excluded portion. *Id.* Here, we find no error, let alone palpable error, in the exclusion of the entire videotaped interrogation.

## V. ASSAULT UNDER EXTREME EMOTIONAL DISTURBANCE.

 Appellant argues that the jury should have been instructed on assault under extreme emotional disturbance as a lesser included offense of each count of first-degree assault. KRS 508.040. That statute specifically limits its application to prosecutions "in which intentionally causing physical injury or serious physical injury is an element of the offense," and the Commonwealth argues that Appellant was indicted for and convicted of only wanton assaults. That, however, is only partially true, because the conviction of second-degree assault was premised on an instruction that permitted conviction on alternative theories of intentional infliction of serious physical injury or wanton infliction of serious physical injury by means of a dangerous instrument. Furthermore, each instruction on first-degree assault was followed by an instruction on second-degree assault as a lesser included offense that included the same alternative theory of intentional conduct. Thus, if supported by the evidence, Appellant would have been entitled to additional instructions on assault under extreme emotional disturbance as lesser included offenses of each instruction on second-degree assault. This issue was preserved for appeal by Appellant's tendered instructions on assault under extreme emotional disturbance, which the trial court rejected. RCr 9.54(2).

Under KRS 508.040 (by reference to KRS 507.020(1)(a)), a defendant found guilty of intentional first-degree assault, KRS 508.010, or second-degree assault, KRS 508.020, may have his sentence reduced "if he acted under the influence of extreme emotional disturbance *for which there was a reasonable explanation or excuse*, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." KRS 507.020(1)(a) (emphasis added).

 In *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky.1986), we said that an extreme emotional disturbance is "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Id.* at 468–69. Further, "[e]xtreme emotional disturbance is established only by a showing of some dramatic event which creates a temporary emotional disturbance." *Baze v. Commonwealth*, 965 S.W.2d 817, 823 (Ky.1997) (citations and quotations omitted); *see also Whitaker v. Commonwealth*, 895 S.W.2d 953, 954 (Ky.1995); *Cecil v. Commonwealth*, 888 S.W.2d 669, 673 (Ky. 1994); *Bowling v. Commonwealth*, 873 S.W.2d 175, 179 (Ky.1993).

> However, the triggering event need only be "sudden and uninterrupted." No definite time frame between the triggering event and the killing is required, so long as the EED remains uninterrupted. In fact, the onset of EED may be more gradual than the "flash point" normally associated with sudden heat of passion. In *Springer* [*v. Commonwealth*, 998 S.W.2d 439 (Ky.1999) ], we said "[t]he fact that the triggering event may have festered for a time in [the defendant's] mind before the explosive event occurred does not preclude a finding that she killed her husband while under the influence of extreme emotional disturbance."

*Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky.2000) (citations and quotations omitted); *see also Holland v. Commonwealth*, 114 S.W.3d 792, 807 (Ky.2003);

*Fields v. Commonwealth,* 44 S.W.3d 355, 359–60 (Ky.2001).

In the case *sub judice,* Appellant argues that the "reasonable explanation or excuse" for his extreme emotional disturbance was that A.S. would persist in crying or sucking her thumb despite his insistence that she not do so, coupled with the stress of parenting both A.S., age six-months, and his son, age seventeen-months. (Appellant was unemployed and was the primary caretaker of the children while Porter was at work.)

■ Although "the concept of adequate provocation is broad enough to include the cumulative impact of a series of related events," *Holland,* 114 S.W.3d at 807, "an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor." *Id.* at 806; *Caudill v. Commonwealth,* 120 S.W.3d 635, 668 (Ky.2003) (victim's refusal of drug-addicted defendant's demand for money not a reasonable explanation or excuse); *Hodge v. Commonwealth,* 17 S.W.3d 824, 850 (Ky.2000) (mere resistance by victim of armed robbery not a reasonable explanation or excuse). No reasonable person would consider the ordinary stresses of childrearing, specifically an infant's crying and thumb-sucking, a "reasonable explanation" for "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan,* 715 S.W.2d at 468–69. *Compare Holland,* 114 S.W.3d at 807–08 (finding erroneous refusal to instruct jury on extreme emotional disturbance where, within days of shooting, suicidal defendant with borderline personality disorder underwent back surgery, discovered boyfriend in bed with another

woman, experienced police intervention over suicide threat, and was under influence of prescribed narcotics) *with Foster v. Commonwealth,* 827 S.W.2d 670, 678 (Ky. 1991) (holding that defendant's drug abuse and upbringing in abusive, dysfunctional family was insufficient "triggering event" to sustain instruction on extreme emotional disturbance). The trial court properly refused to instruct the jury on assault under extreme emotional disturbance.

Accordingly, the judgment of convictions and the sentences imposed by the McCracken Circuit Court are AFFIRMED.

All concur.