William ALFORD, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–SC–000141–MR.

Supreme Court of Kentucky.

May 19, 2011.

David S. Mejia, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, William Bryan Jones, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

## OPINION OF THE COURT

William Alford appeals from his convictions of first-degree sodomy and first-degree sexual abuse, for which he received a total sentence of life imprisonment. He appeals to this Court as a matter of right.[1]

---

1. Ky. Const. § 110(2)(b). Appellant's Judgment and Order Imposing Sentence was entered on March 14, 2003, and no notice of appeal was ever filed. On March 9, 2009, Appellant filed a Motion to File Belated Appeal with this Court. This Court then remanded the case to the Hardin Circuit Court for a hearing and determination as to whether Appellant could be properly charged with his counsel's ineffectiveness in failing to file a

The extensive use of inadmissible hearsay requires we reverse and remand for a new trial.

This case arose pursuant to an allegation by S.A., then age thirteen, that Appellant, her mother's boyfriend, had sexually abused her for a number of years. Appellant, who is not S.A.'s biological father, began living with S.A.'s mother Billie Jo White and her children (S.A. and her younger brother W.A.) when S.A. was three years old. The family (Appellant, White, S.A., and W.A.) moved to Hardin County, Kentucky, in 1993 when S.A. was five years old. Appellant and White subsequently had two children together. After moving to Hardin County, the family first lived in a two-bedroom trailer, and, in 1998, moved to a three-bedroom trailer. S.A. and W.A. shared the same biological father, with whom they had visitation.

On January 28, 2001, during a visitation with her biological father in Louisville, S.A., who had just turned thirteen, told her stepsister and stepmother that Appellant had been sexually abusing her. S.A.'s biological father took her to Kosair Hospital that evening, where a physical examination was performed. This examination did not reveal any evidence of sexual or physical abuse. Later that evening, S.A. was interviewed by Detective Bruce Slack of the Kentucky State Police, in which interview she alleged that Appellant had sexually and physically abused her. W.A. was interviewed as well. Thereafter, S.A. began living with her biological father, and did not return to her mother's home. Two months later, on March 29, 2001, S.A. was interviewed and examined at the Barren River Area Child Advocacy Center by Dr. Patrick Hayden. Dr. Hayden's examination revealed physical evidence of sexual contact. On March 30, 2001, an indictment was returned charging Appellant with one count of first-degree rape and one count of first-degree sodomy, alleged to have occurred from 1993 through January 25, 2001.

A jury trial commenced on October 23, 2002. At the time of trial, S.A. was fourteen years old and living with her biological father. S.A. testified that Appellant began touching her private parts when she was three or four years old. S.A. testified that Appellant began forcing her to perform oral sex on him when she was in about second grade.[2] S.A. recalled being six or seven years old when Appellant first began putting his penis in her vagina. She recalled being in third grade when he first began putting his penis in her anus. S.A. estimated that Appellant had raped her "three to four hundred times, it felt like." S.A. testified that Appellant made her perform oral sex "a couple hundred times."

S.A. indicated the incidents usually took place in the bedrooms or bathroom of the trailer. At times she would testify as to what Appellant would generally do, and also described approximately fifteen specific incidents of oral, anal, or vaginal intercourse. S.A. testified that sometimes her mother was home when the abuse took place and sometimes she was not. S.A. testified that she did not tell her mother, or anyone, about what Appellant was doing

notice of appeal. *See Commonwealth v. Wine,* 694 S.W.2d 689 (Ky.1985), *overruled on other grounds by Hollon v. Commonwealth,* 334 S.W.3d 431 (Ky.2010). On remand, the circuit court found that Appellant's trial counsel had failed to file a notice of appeal and had never discussed the possibility of an appeal with Appellant, that Appellant was never advised of his right to appeal by the trial judge, and that Appellant should not be held responsible for his counsel's ineffective assistance. This Court then granted Appellant's motion, and permitted his belated appeal to proceed.

2. On cross-examination, S.A. recalled being about five years old at the time.

to her because she was afraid that Appellant would hurt her (S.A.) or her family. S.A. described Appellant as a "violent man," and testified that he had hit, kicked, slapped, and choked her, including once causing her to black out; that he had hit W.A. and had once choked her younger sister, L.A., when L.A. was two years old; and that he had hit and thrown things at White and once held a gun to her head. S.A. testified that Appellant drank alcohol and smoked marijuana. She testified that he made her and W.A. drink wine coolers, and that Appellant hit her when she got sick and could not finish her wine cooler. She testified that Appellant once forced her to smoke marijuana, which made her sick.

S.A. testified that she was raped for the last time on January 25, 2001. She testified that this occurred in Appellant's bedroom in the trailer while her mother was at the store. On January 28, 2001, while visiting her biological father in Louisville, she told her stepsister and her stepmother that Appellant had been abusing her. After this date S.A. began living with her biological father, and did not return to her mother's home. S.A. testified that she had always wanted to live with her biological father, but denied having made up the allegations in order to be able to do so.

S.A.'s mother, Billie Jo White, testified that despite living in a small trailer with thin walls, she never saw, nor heard, anything that indicated S.A. was being sexually assaulted or physically abused. White acknowledged, however, that there were times when she was not at home, because she was at work or elsewhere, and therefore could not say what may or may not have happened when she was not there. White denied that Appellant had been physically abusive to her (White).

W.A. (S.A.'s brother), who was thirteen years old at the time of trial, testified that he never saw Appellant engage in anything improper with S.A. When confronted with a statement he had made to police when he was interviewed in January, 2001, regarding S.A.'s allegations—that he once walked in the bedroom and saw S.A. on her hands and knees and saw Appellant sitting on the edge of the bed—W.A. testified that he hadn't really seen this. W.A. testified that he been told to say that story by their (his and S.A.'s) biological father. W.A. testified that the allegations were the result of a plan by their biological father so that S.A. could come and live with him. When confronted with another statement he had made in the interview—that there were times when he had seen Appellant and S.A. in the bathroom together—W.A. testified that their father had told him to say that too and that he had never really seen this either. W.A. further testified that their father had pornographic movies and adult sex toys in his home.

Dr. Hayden testified as to his interview and examination of S.A. Dr. Hayden testified that his physical findings were consistent with sexual penetration of S.A.'s vagina. He did not find evidence of anal penetration. Detective Slack testified as to the contents of his interview with S.A.

Appellant did not take the stand. The jury was instructed on one count of first-degree rape and one count of first-degree sodomy, with first-degree sexual abuse as a lesser included offense of both charges. The jury found Appellant guilty of first-degree sodomy and first-degree sexual abuse (as a lesser included offense of first-degree rape). Appellant was ultimately sentenced to life imprisonment for the first-degree sodomy conviction and five years for the first-degree sexual abuse conviction, for a total of life imprisonment.

Appellant raises a number of assignments of error, most of which were not preserved by trial counsel, for which Ap-

pellant requests palpable error review under RCr 10.26.[3] We conclude that the admission of an egregious amount of inadmissible hearsay requires the convictions be reversed and the case remanded for a new trial. We shall first address this error, and then address Appellant's remaining arguments likely to recur on retrial.

### Inadmissible Hearsay/Bolstering

■ Appellant contends that the repeated use of inadmissible hearsay, through the testimony of Detective Slack and Dr. Hayden, constitutes palpable error requiring reversal. Appellant concedes that these assignments of error are unpreserved, as trial counsel failed to object, and requests review per RCr 10.26.

Detective Bruce Slack of the Kentucky State Police was called as the last Commonwealth's witness. Slack testified that he took a taped statement from S.A. on January 28, 2001. The prosecutor asked, "Was her testimony [at trial] consistent with the statement that she gave to you?" Detective Slack responded that it was. On re-direct, the prosecutor asked specifically about Detective Slack's interview with S.A., including the following:

Q. Did you ask her the question, did the defendant ever use condoms? Do you recall if she responded, no, he never did?

A. Yes, sir.

Q. Do you recall her making the statement that "he told me I will kill you and he said to my mom, if you ever leave me, I will kill you"? And then [S.A.] saying that the defendant said that to her and her mother Billie Jo White?

A. Yes, sir.

. . . .

Q. [S.A.] said that she had her last sexual contact that Thursday night, is that correct, sir?

A. Yes, sir.

Q. Do you recall that she said he forces her, speaking in relation to her mother, he forces her to do things? "He gets drunk, he makes mom do things he makes me do." And then she said, "have sex with me." Is that correct?

A. Yes, sir.

Q. Do you recall, related to alcohol, [S.A.] said that "he tricked me into drinking gin and orange juice"?

A. Yes, sir.

Q. Do you recall [S.A.] said that "he tells me I'm really good at it"?

A. Yes, sir.

Q. Do you recall ... the question was asked, "How many times did you have intercourse?" And she said, "More than I can count." And then you in fact were the one that prodded her to assign a number to this. Is that correct?

A: That's correct, sir.

Q: You prodded her with 200, and then you said 300 or 400, and finally she adopted the 300 to 400. Is that an accurate assessment, sir?

A: Yes, sir.

Q: The question was asked, related to oral sex, and she responded, "He makes me do it every day of the week." Then, the question was asked, "How often was that?" And she said, "Four days a week." Is that correct?

A: That's correct.

Q: Did she tell you that she felt safer with her natural father, sir?

A: Yes, sir.

---

**3.** Appellant retained new counsel for the purpose of filing this appeal.

Q: Then again she was asked questions related to her little brother, and the questions were asked, "What does he do physically to [W.A.]?" She said, to both of us, he hits us, he chokes us, he kicks us. . . . when he has no beer or weed . . . and when he does have beer and weed? Do you recall her saying that?

A: Yes, sir.

. . . .

Q: Do you recall that she told you that at 9 years of age, her mother found blood in her panties, and her mother "asked me about it, and I told her, I don't know anything about it." Do you recall that statement?

A: Yes, sir. While her mother was doing the laundry. . . . [4]

. . . .

Q: Did she ever say anything to you about why she would make this up and lie?

A: No, sir. She did not. She was very much afraid, scared, of what the outcome was going to be. . . .

We agree with Appellant that the admission of this testimony was error. There is no hearsay exception for statements made by an alleged victim of sexual abuse to a police detective. *Smith v. Commonwealth*, 920 S.W.2d 514, 516–17 (Ky.1995) (The rationale behind prohibiting hearsay testimony in situations involving social workers is applicable to the case of a police detective relating prior statements by an alleged victim.). *See also Bussey v. Commonwealth*, 797 S.W.2d 483, 484–85 (Ky.1990); *Belt v. Commonwealth*, 2 S.W.3d 790, 792 (Ky.App.1999).

On appeal, the Commonwealth does not attempt to justify the admission of this testimony under any hearsay exception,[5] but simply urges this court to hold any error in its admission harmless. Because the error is unpreserved, our review is limited to one for palpable error. RCr 10.26. "In order to demonstrate an error rises to the level of a palpable error, the party claiming palpable error must show a 'probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of law.'" *Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky.2009) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)).

This Court has consistently recognized that this type of hearsay testimony is highly prejudicial, and unfairly bolsters the credibility of the alleged victim. *See Smith*, 920 S.W.2d at 516–17 (reversible error where police detective permitted to testify about statements made to him by alleged victim of sexual abuse); *Bussey*, 797 S.W.2d at 484–85 (reversible error where four law enforcement officials were permitted to repeat what alleged sexual abuse victim told them); *Belt*, 2 S.W.3d at 792 (reversible error where police detective read narrative from uniform citation containing alleged sexual assault victim's allegations).

S.A.'s in-court and out-of-court statements were the only evidence linking Appellant to the evidence of sexual contact. Hence, S.A.'s credibility was crucial to the Commonwealth's case. The extensive hearsay by Detective Slack was highly

---

4. At trial, White was asked (apparently in light of this claim by S.A.) if she ever found blood on S.A.'s clothing in the laundry. She testified that she did not.

5. The statements do not meet the criteria for admissibility under KRE 801A(a)(2) (prior consistent statements) under the facts of this case, *cf. Noel v. Commonwealth*, 76 S.W.3d 923, 927–29 (Ky.2002), and the Commonwealth does not attempt to argue such.

prejudicial and served only to unfairly bolster S.A.'s credibility. In light of the above, we conclude the admission of this testimony, particularly when combined with the inadmissible hearsay repeated by Dr. Hayden (as will be discussed forthcoming), rises to the level of palpable error. *Allen*, 286 S.W.3d at 226.

■■ Dr. Patrick Hayden interviewed and examined S.A. at the Barren River Area Child Advocacy Center on March 29, 2001, two months after the allegations were reported. At trial, Dr. Hayden read extensively from his interview with S.A., and, in doing so, identified Appellant as the perpetrator and basically repeated the allegations to which S.A. had already testified. In this regard, Dr. Hayden testified, without objection, that S.A. told him that, on the evening of January 28, 2001, she had reported to her stepmother that she had been repeatedly raped over a number of years by "her mother's boyfriend." Dr. Hayden then testified at length as to various acts of oral, vaginal, and anal intercourse, and sexual touching, which S.A. had related to him. Dr. Hayden testified that S.A. told him that the sexual abuse continued over the years until she got to the point of where she was tired of him (Appellant) touching her and forcing her to have sex, until one weekend when she was visiting her father she got up the nerve to tell her stepsister who told her to tell her stepmother. Dr. Hayden further testified that S.A. told him that Appellant would beat, kick, hit, and slap her, and that she saw him hit and punch her stepbrother and stepsister[6] who lived with her.

As to his physical findings, Dr. Hayden testified that he found notching of S.A.'s hymen and scarring which indicated vaginal penetration. He did not find any physical signs of anal penetration. Dr. Hayden was asked on both direct and cross-examination to read from a report from Kosair Hospital, where S.A. was examined on January 28, 2001, the day she reported the allegations. The Kosair report stated that no evidence of vaginal or anal tearing or other evidence of trauma was found. As to the discrepancy between his findings and those from Kosair, Dr. Hayden testified that while he performed an extensive examination, he could not tell from the report what type of exam was performed at Kosair.[7]

■ On appeal, Appellant contends that much of the testimony by Dr. Hayden as to his interview with S.A. was inadmissible under KRE 803(4) and constitutes palpable error. We agree. First, Dr. Hayden's repetition of S.A.'s identification of Appellant as the perpetrator was error.[8] It is well settled that the identity of the perpetrator is rarely, if ever, pertinent to medical diagnosis or treatment. *Garrett v. Commonwealth*, 48 S.W.3d 6, 11–12 (Ky. 2001). This principle was recently reaffirmed by this Court in *Colvard v. Commonwealth*, 309 S.W.3d 239 (Ky.2010). This case falls squarely under the general rule. Additionally, while S.A.'s statements to Dr. Hayden describing what was done to her physically are admissible under KRE 803(4), her statements regarding whom she told, and why, are not pertinent to medical diagnosis and treatment, and do

---

**6.** The doctor appeared to be referring to S.A.'s half (rather than "step") brother and sister.

**7.** No medical personnel from Kosair testified at trial.

**8.** There was no doubt that the term "her mother's boyfriend" was referring to Appellant, based on the trial testimony of others.

not qualify for admission under this exception.[9]

Appellant concedes that this error was unpreserved, as trial counsel offered no objections, and requests this court review for palpable error per RCr 10.26. Dr. Hayden's testimony not only named Appellant as the perpetrator, but went on to basically repeat the allegations to which S.A. had already testified, including statements that had no relevance to medical diagnosis and treatment (identity notwithstanding). The extremely prejudicial nature of this type of hearsay, when repeated by a professional, is well recognized. *Sharp v. Commonwealth*, 849 S.W.2d 542, 545 (Ky.1993). *See also Colvard*, 309 S.W.3d at 247 (recognizing extreme prejudice and reversible error due to physician's testimony repeating hearsay of alleged victim of sexual abuse identifying defendant as alleged perpetrator). In the present case, the extensive, inadmissible hearsay testimony by Dr. Hayden was highly prejudicial and unfairly bolstered the credibility of S.A.

As previously discussed, S.A.'s credibility was crucial to the Commonwealth's case. We conclude that the cumulative, if not individual, error in the admission of the extensive and highly prejudicial hearsay by Dr. Hayden and Detective Slack unfairly bolstered the credibility of S.A. to the extent as to rise to the level of palpable error. RCr 10.26. Accordingly, the case must be reversed and remanded for retrial.

### Sufficiency of the Indictment and Instructional Error

■ Appellant makes two closely related claims of error, which we will address together: that the indictment was insufficient under the Due Process Clause, and that error in the jury instructions deprived him of his due process rights and violated principles of double jeopardy.[10] The sufficiency of an indictment is measured by two criteria under the Due Process Clause: first, it must "sufficiently apprise a defendant of the criminal conduct for which he is called to answer;" second, the indictment and instructions together must provide adequate specificity so as to allow the defendant to "plead acquittal or conviction as a defense" against future indictment and punishment for the same offense. *Schrimsher v. Commonwealth*, 190 S.W.3d 318, 325 (Ky.2006) (citing *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Valentine v. Konteh*, 395 F.3d 626, 634–35 (6th Cir. 2005)). See also RCr 6.10(2) (stating that an indictment "shall be sufficient if it contains, a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged").

---

9. For purposes of retrial, we note that S.A.'s statements to Dr. Hayden that she saw Appellant hit and punch her *siblings* are not relevant to diagnosis or treatment *of S.A.* and hence, do not qualify for admission under KRE 803(4).

10. The indictment states:
 The Grand Jurors of the County of Hardin, the name and by the authority of the Commonwealth of Kentucky, charge:
 **COUNT 1:** That from 1993, when the victim was five (5) years of age, through the 25th day of January, 2001, in Hardin County, Kentucky, the above named Defendant committed the offense of First–Degree Rape when he engaged in sexual intercourse with "S.M.A.", by forcible compulsion.
 **COUNT 2:** That from 1993, when the victim was five (5) years of age, through the 25th day of January, 2001, in Hardin County, Kentucky, the above named Defendant committed the offense of First–Degree Sodomy, when he engaged in deviate sexual intercourse with "S.M.A.", by forcible compulsion.
 Against the peace and dignity of the Commonwealth of Kentucky.

■ Appellant argues that the indictment was insufficient because it failed to adequately inform him of the specific crimes for which he was charged. However, when there is evidence of a pattern of abuse, the Commonwealth is permitted to charge the defendant with a single, general count of each offense, as was done here. *See Applegate v. Commonwealth*, 299 S.W.3d 266, 270–71 (Ky.2009) (holding sufficient an indictment that charged the defendant with a single, general count of each of the offenses of first-degree rape and first-degree sodomy, where the testimony indicated multiple occasions of sexual abuse, and noting that a second prosecution for the same conduct would be barred by principles of double jeopardy). The indictment was therefore sufficient on its face.

■ Appellant further argues that the sexual abuse instructions under Count 1 and Count 2 violated due process and double jeopardy, as they were identical and did not differentiate what physical conduct of Appellant constituted the two separate counts of sexual abuse.[11] Appellant was charged with first-degree sexual abuse as a lesser included offense of both first-degree rape and first-degree sodomy. As to Count 1, the jury acquitted Appellant of first-degree rape, but convicted him of the lesser included offense of first-degree sexual abuse. As to Count 2, the jury convicted Appellant of first-degree sodomy. While the jury instructions for the primary charges stated entirely separate offenses, the instructions for the two lesser included offenses were identical.[12]

■ It is well settled that where there are multiple counts of the same offense, "a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky.2008). In the present case, however, the sexual abuse instructions did not violate *Harp* because the jury was clearly directed to two different types of conduct. Count 1 of the jury instructions gave the jury two choices—rape,[13] or sexual abuse as a lesser included offense of rape. Count 2 of the instructions again gave the jury two choices—sodomy,[14] or sexual abuse as a lesser included offense of sodomy. Looking at the instructions *in toto*, not in isolation, there was no *Harp* issue, and hence, no error, because of the deliberate way the instructions were structured.

11. Appellant concedes this alleged error was unpreserved and requests palpable error review per RCr 10.26.

12. The jury instructions for both lesser included counts of first-degree sexual abuse stated:

If you do not find the Defendant guilty under [instruction number], you will find the Defendant guilty of First–Degree Sexual Abuse under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county from 1993 through January 25, 2001, and before the finding of the Indictment herein, he subjected [S.A.] to sexual contact;

AND

B. That at the time of such contact, [S.A.] was less than 12 years of age.

13. The rape instruction under Count 1 required a finding that Appellant engaged in "sexual intercourse" with S.A. "Sexual intercourse" was defined per the instructions as "sexual intercourse in its ordinary sense."

14. The sodomy instruction under Count 2 required a finding that Appellant engaged in "deviate sexual intercourse" with S.A. "Deviate sexual intercourse" was defined per the instructions as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another."

### KRE 404(b) Evidence

 Appellant assigns as error,[15] in violation of KRE 404(b), testimony that Appellant had threatened and beaten S.A.'s mother and placed a gun to her head; that Appellant had threatened or beaten S.A., and beaten her brother W.A.; that Appellant used alcohol and marijuana; that Appellant had given alcoholic beverages and/or marijuana to S.A. and W.A.; and that Appellant had once used excessive discipline on one of the younger children.

 Appellant contends that the aforementioned evidence was inadmissible under KRE 404(b), as it was not probative as to whether the rape and sodomy charges occurred and served only to poison the sentiment of the jury against him. Evidence of other crimes or bad acts is generally not admissible to prove a person committed the crime charged. KRE 404(b). "[E]vidence of criminal conduct other than that being tried is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character." *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky.1992). KRE 404(b) is exclusionary in nature, and must be applied cautiously. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky.1994).

We believe the evidence regarding threats and violence by Appellant against not only S.A., but her other family members as well, was relevant in light of S.A.'s testimony that she was afraid to report the abuse out of fear that Appellant would hurt her or her family. *See Norton v. Commonwealth*, 890 S.W.2d 632, 638 (Ky. App.1994) (citing *United States v. Masters*, 622 F.2d 83 (4th Cir.1980)). The testimony regarding marijuana and alcohol use by Appellant and forced use by the children was necessary for a full presentation of the case, and also related to S.A.'s alleged fear of Appellant. *See Gilbert v. Commonwealth*, 838 S.W.2d 376, 379 (Ky.1991) (" 'In order to determine exactly what did or did not happen at any particular stage in the sequence, it was necessary that the jury see the entire picture ... evidence that provides necessary perspective is competent.' ... Juries do not have to perform their function of fact-finding in a vacuum.") (quoting *Ware v. Commonwealth*, 537 S.W.2d 174, 179 (Ky.1976)). Accordingly, on retrial, with proper notice, the aforementioned evidence would be admissible.

### Sufficiency of the Evidence

 Appellant argues that the evidence was insufficient to sustain a conviction. We disagree. S.A.'s testimony describing the various instances of abuse and identifying Appellant as the perpetrator was sufficient to defeat a motion for a directed verdict. *See Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991).

Finally, in light of our holding that Appellant is entitled to a new trial, the arguments raised by Appellant regarding improprieties in the prosecutor's closing argument are rendered moot. For the aforementioned reasons, the judgment of the Hardin Circuit Court is reversed, and the case remanded for proceedings consistent with this opinion.

All sitting. MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE, and SCOTT, JJ., concur. CUNNINGHAM, J., concurs by separate opinion in which ABRAMSON and Scott,

---

**15.** Appellant concedes said error is unpreserved, as defense counsel made no objections to any of the complained of testimony. Appellant requests review under RCr 10.26.

JJ., join. VENTERS, J., concurs in result by separate opinion in which SCHRODER, J., joins.

CUNNINGHAM, J., concurring:

I continue to subscribe to the belief that for this Court to reverse a criminal conviction on palpable error, the threshold of palpable error must be very high. It should be so egregious that it jumps off the page. When considered in the context of the trial in this case, it jumps off the page and cries out for relief. That is why I concur in the excellent opinion of the majority.

Anyone familiar with the trials of serious sex cases, such as this one, knows that they are tense and highly emotionally charged affairs. They become more so when the victims are, as in this case, children. As recognized down through the ages, the charge of rape or comparable wrong doing is easily made and difficult to defend. That is why, until recent times, corroboration was required for allegations by a single witness.

The sexual assault upon a child is a horrible crime. The charge itself almost carries inherent prejudice. There is tremendous societal pressure for juries to convict. Unfortunately, in many cases—such as this one—it comes down to the victim's word against the defendant's. Whether a guilty person goes unpunished for a dastardly crime or an innocent person goes to the penitentiary for the rest of his life comes down to credibility.

The only physical evidence in this case was highly questionable and somewhat mysterious. A physical exam of the victim at Kosair Children's Hospital immediately after her initial allegations revealed no evidence of abuse. However, after being away from Appellant and living with her biological father for two months, the victim was examined at the Barren River Area Child Advocacy Center by Dr. Patrick Hayden. At that time, Dr. Hayden found evidence of sexual abuse. This evidence of "late discovery" becomes suspect when coupled with the testimony of the victim's brother who said he was put up to making false allegations against Appellant by their biological father. The victim's brother also stated that their biological father had pornographic movies and sex toys in the home.

It was against this back drop that the Commonwealth called Detective Slack and Dr. Hayden to testify, not just as to their findings, but also concerning detailed statements made to them by the alleged victim. Through two pages of opinion, the majority recites the leading questions whereby the Commonwealth's Attorney testifies as much as the witness. It is a full regurgitation of the victim's testimony told through the Commonwealth's Attorney and state detective. Add to this the testimony of Dr. Hayden, a member of a profession which wears the mantle of respect and authority in most every community. He testified at length about the hearsay statements made to him by the victim. Unquestionably, the testimony of these two witnesses was error. In light of the fact that this case was primarily a "he said-she said" trial, the echoing of the claims of the victim through their respective positions was highly prejudicial and amounts to manifest injustice.

No objection was made at trial to the highly prejudicial testimony. Trial defense counsel may well have had legitimate reasons for this inaction. However, the defense lawyer is not the only lawyer in the courtroom who has an obligation to follow the rules of evidence and pursue the ends of justice. When I was a Commonwealth's Attorney, I always took pride in the words of this Court in the case of *Niemeyer v. Commonwealth*, 533 S.W.2d

218, 222 (Ky.1976): "One of the finest offices the public can give to a member of the legal profession in this state is that of Commonwealth's Attorney. Its very status becomes a mantle of power and respect to the wearer. Though few are apt to wear it lightly, some forget, or apparently never learn, to wear it humbly. No one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be."

These are the words of a former Commonwealth's Attorney and Chief Justice of this Court, the distinguished John Palmore. They are germane to this case in one real sense. Well-intended as he may have been, the prosecutor should have known better. Hopefully, this case will be instructive to all. I regret that this case must be reversed. But I must concur fully with the majority.

ABRAMSON and SCOTT, JJ., join.

VENTERS, J., concurring in result:

I concur in the reversal of the judgment upon the grounds stated by the majority, but I would also reverse the case because the two identical jury instructions for first-degree sexual abuse, as presented to the jury, did not sufficiently distinguish the two offenses, and therefore they fail to satisfy the requirements of *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky.2008).

SCHRODER, J., joins.