## Caudill v. Commonwealth.

(Decided May 2, 1930.)

H. H. SMITH for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Indicted for murder of his nephew, Varlie Caudill, the appellant was convicted of the crime of voluntary manslaughter and sentenced to serve two years and one day in the penitentiary. He appeals.

The only proof as to the manner of the homicide produced by the commonwealth consisted of the testimony of witnesses as to statements made by the appellant immediately after the shooting. In substance they stated that the appellant said that he and his wife were asleep in their cabin located on Holly Bush branch of Caney fork of Beaver creek; that, about 2 o'clock in the morning, he was aroused from his sleep by his wife, who told him there was somebody trying to get in by the door; that he jumped from the bed, grabbed his revolver, and, thinking that the person on the outside was either his son Jasper or John Huff or Golden Slone, and thinking that they had come to do him harm, he fired through the door and hit his nephew who, as a matter of fact, was the person who was trying to enter the cabin; that when Varlie Caudill was hit, he called out to the appellant, who then recognized the voice as that of his nephew of whom he was very fond; that he then went immediately to the door, opened it, found that it was his nephew; that he at once took him into the house, sent for the neighbors, and did all he could to save the boy's life, but in vain. The commonwealth also introduced proof to show that a very bad state of feeling existed between the appellant and his son and Huff and Slone; that he had stated to the witnesses that when he shot through the door he thought that it was his son or Huff or Slone who was outside, and that he shot to kill whoever was on the outside. The appellant testified that he was asleep and was aroused from his slumber by his wife by the statement that some one was at the door; that he found that his wife was correct, for some one was pushing very hard on the door as if to force an entrance; that he called out to the intruder asking him who he was, but that he got no response, and that when the intruder continued his efforts to force the door, and had so far succeeded as to force the top part of the door away from the door jamb to such an extent as that he could see the starlight through the crack, fearful that the intruder, whoever he was, had come to do him harm or to rob the house, and not knowing who it was, he fired as he thought through the top of the door to scare away the intruder, but with no intention at that time to hit him, but unfortunately did not fire high enough, with the result that the bullet did hit the intruder. The rest of his testimony does not differ materially from what the commonwealth's witnesses said he reported he did after the boy was shot. Appellant

denied that there was any hard feeling between himself and his son or Huff or Slone, and denied that he thought it was his son or Huff or Slone outside the door, or that he had said that he thought it was them or either of them who was trying to force an entrance; denied he had stated that he had meant to kill whoever was outside of the door. It is agreed that the relationship existing between the appellant and his nephew was of the best, and that the boy had come to the appellant's house probably with the intention of staying there the rest of the night with his uncle. Before the boy died he stated that the reason he had not made himself known when he was trying to get into the house was that he was afraid of a big dog that was in his uncle's yard.

As grounds for reversal, the appellant insists, first, that he was entitled to a peremptory instruction; secondly, that the court erred in the instructions it gave; and, thirdly, that he was entitled to an instruction on involuntary manslaughter.

As to the first contention of the appellant, we cannot agree. There was evidence to show that the appellant thought that those on the outside of the door were personal enemies of his, and that he intended to kill them when he shot through the door, for the purpose of wreaking his vengeance rather than that of warding off a hostile attack. Although of course appellant insists that, even if he thought the intruders were enemies of his, and even though when he shot he did intend to kill them, yet under the circumstances he had the right to do so, since he was fearful of his safety and that of his house. However, the jury had the right to believe, if it chose to do so, that, if appellant believed the intruders to be his son or Huff or Slone, a parley would have averted the tragedy, and that appellant, when he shot, as a responsible man knew this, and that he was not so fearful of his safety and that of his house as he said he was. It must be remembered that the right of self-defense goes no further than the right to use such force as appears to the person attacked reasonably necessary to repel the assault. Lawson v. Commonwealth, 224 Ky. 443, 6 S. W. (2d) 488. Appellant when he testified was particular to say that he had called out to the intruder before he shot, but the witnesses for the commonwealth said that, in stating how the homicide occurred, the appellant had not claimed that he had called out, but that he shot at once through the door with the intent to kill those on the outside. Further,

appellant made the claim that he fired to scare the intruder away, but by accident fired too low. The witnesses for the commonwealth stated that he said that, when he fired, he fired to kill. Thus we see that the evidence warranted the jury in believing either that appellant was actuated by malice towards his enemies when he fired the fatal shot, rather than by the purpose of defending himself or his household, or that appellant knowingly used more force than appeared reasonably necessary to him at the time to ward off the intruder or in believing both states of case. It follows that the court did not err in overruling the motion for a peremptory instruction.

As to the second contention of the appellant, complaint is made, first, of instruction No. 4 on self-defense, which reads:

"Though the jury may believe and find from the evidence that defendant shot and killed said Varlie Caudill as described in instructions No. 1, No. 2 or No. 3, yet if you believe from the evidence that at the time he so shot and killed him the said Varlie Caudill was then and there about to inflict death or great bodily harm upon defendant; or if defendant believed at the time exercising a reasonable judgment that said Varlie Caudill, Jassie Caudill, or the person or persons, then at the door was about to inflict death or great bodily harm upon defendant, his wife, or other members of his family, and that the only reasonable means of escaping or warding off such danger, or to him such apparent danger, was to so shoot, wound and kill said Varlie Caudill, or the person or persons at said door, you will acquit the defendant on the ground of self-defense, defense of another, or apparent necessity."

Almost this identical instruction was disapproved in the case of Howard v. Commonwealth, 67 S. W. 1003, 24 Ky. Law Rep. 91. There the instruction read:

"If you believe from the evidence that at the time defendant, George Howard, shot and wounded Daniel Howard, from which shooting and wounding said Daniel Howard soon thereafter died (if you do believe from the evidence beyond a reasonable doubt that the defendant did do said shooting and wounding), the defendant, George Howard, believed and

had reasonable grounds to believe that Daniel Howard was then about to kill said defendant, or to inflict upon him some great bodily harm, and that to shoot and wound said Daniel Howard was necessary, or seemed to the defendant to be necessary, in the exercise of a reasonable judgment in order to escape or avert said danger, either real or to the defendant apparent, you will acquit defendant on the ground of self-defense and apparent necessity.''

In condemning that instruction, we said:

''The latter part of this instruction was erroneous in the use of the word 'escape,' which seems to imply that defendant must seek safety in flight, or other means than by defending himself from the impending danger.''

Further, the word ''reasonable'' in the phrase of the given instruction reading, ''and that the only reasonable means of escaping,'' etc., should be eliminated and the word ''safe'' substituted therefor. See Slone v. Commonwealth, 230 Ky. 199, 18 S. W. (2d) 1005. This Slone case is not to be taken as approving of the use of the word ''escaping'' as is here condemned, for that question was not argued or referred to in that case.

The next instruction complained of is the fifth, which was the instruction on the defense of the appellant's habitation. This instruction was erroneous, in that the court confined the right of the appellant to defend his habitation to his belief that the intruder was attempting to break into the dwelling for the purpose of doing personal violence to the inhabitants. The appellant testified that he thought the intruder was either about to do personal violence to the inhabitants or was about to rob the home. If the jury believed appellant's statement in this regard, then the appellant had a right to use such force as appeared to him reasonably necessary to prevent the robbery. This identical question was discussed and decided, as the appellant contends it should be, in the case of Carroll v. Commonwealth, 221 Ky. 557, 299 S. W. 183, to which reference is made for a discussion of the reasons on which the doctrine rests.

It is lastly contended that the appellant was entitled to an instruction on involuntary manslaughter. In the light of his testimony that he intended to fire through

the top of the door to frighten the intruder away, but did not intend to kill him, and in view of the fact that the jury had the right to believe that appellant reasonably believed that all that was necessary to repulse the intruder was to fire his revolver so as not to hit the intruder, but that appellant had carelessly fired too low and in the direction of the intruder, rather than in the air or into the floor, we are of the opinion that the appellant was entitled to an instruction on involuntary manslaughter, which consists in the doing of some unlawful act which results in the death of another without purpose to kill him or such killing of another while doing a lawful thing in an unlawful or careless manner. Brown v. Commonwealth, 219 Ky. 406, 293 S. W. 975.

For the reasons herein set out, the judgment is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.