## Robey v. Commonwealth.

(Decided March 25, 1932.)

408

SELDEN Y. TRIMBLE, SMITH & McKENZIE, and G. W. RYAN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

On December 12, 1929, J. H. Robey slew Oscar Mason by striking him with an ax and from the wounds thus inflicted Mason died three days thereafter. On May 22, 1930, Robey was put upon trial under an indictment charging him with murder. He was convicted of voluntary manslaughter and his punishment fixed at 15 years in the penitentiary. His motion for a new trial was

sustained by the trial court and the verdict of the jury set aside.

On February 3, 1931, he was again put upon trial, was convicted of voluntary manslaughter, and his punishment fixed at four years in the penitentiary. His motion for a new trial was overruled, and he has appealed.

This homicide occurred in a tobacco barn, where the parties were stripping tobacco; those present were Robey, the slayer, and his wife, and Mason, the slain, and his daughter Isabel. Mason took exception to some remark of Robey's, one word brought on another, Mason started to get an ax, but Robey got it and smacked Mason on the side of the head with it.

Mrs. Robey couldn't testify. So upon the first trial the two principal witnesses were Isabel Mason for the commonwealth and Robey in his own defense. On the second trial Isabel Mason wasn't present, but the commonwealth proved by several witnesses Robey's admission upon the first trial that he had struck the fatal blow and proved by one witness a similar admission made to him by Robey in a private conversation. But in each instance the witness said that Robey claimed he had struck Mason in self-defense.

Robey contends that this verdict is flagrantly against the evidence and that the court erroneously overruled his motion for a peremptory instruction made at the conclusion of the commonwealth's evidence and renewed at the close of all the evidence. The basis of this contention is that each admission of his was accompanied by his assertion that he struck in self-defense, that, however, is but his own conclusion, and it was for the jury to determine whether or not he struck in his necessary self-defense after considering the facts to which Robey testified. Upon the second trial Robey testified that when he struck Mason, Mason was coming upon him with an open knife in his hand; but under cross-examination, when asked if he had said anything about Mason pulling out a knife on the first trial, answered, "I don't recall whether that was asked me or not." The official reporter who had taken the evidence upon the first trial was introduced as a witness, and this is taken from his evidence:

"Q. Did he anywhere say he pulled a knife out of his pocket? A. He did not.

"Q.  Did he anywhere say he saw the knife until after Mason was knocked down?  A.  No, sir."

Thus it was clearly a question for the jury from this evidence to say whether or not in the exercise of a reasonable judgment Robey had reasonable grounds to believe, and did believe, it was necessary to strike Mason with an ax to save himself from apparent danger of death or some great bodily harm.

Robey now complains because the commonwealth was permitted over his objections to exhibit to the jury the ax with which this blow was struck and a portion of Mason's skull bone broken by the blow and removed by the surgeons in their efforts to save Mason's life.  The court didn't err in permitting these things to be shown to the jury, as it enabled the jury to determine the force used by Robey and whether or not it was excessive.

He complains now because the commonwealth was permitted over his objection to show by the clerk that Isabel Mason testified on the first trial and was recognized and subpoenaed as a witness for the second trial, and that an attachment had been issued for her and had not been returned, and also over his objection the commonwealth was permitted to show that just a few days before the second trial she left Trigg county and went to her home in Illinois.  The commonwealth introduced the official reporter, who testified that he had a transcript of the evidence given by Isabel Mason upon the first trial.  He was then asked to read it to the jury, whereupon the defendant objected and the court sustained his objection.  Robey now argues that all this taken together made it look to this jury very much as though he had some part in getting Isabel Mason out of the state and that thus he was prejudiced.  It was very important for the commonwealth to have Isabel Mason's testimony, and since it could not secure her attendance it was important for the commonwealth to show that it had made an effort to get her testimony and the commonwealth had the right to offer to read her testimony at the first trial, but this testimony couldn't be used over defendant's objection, and when he objected his objection was very promptly sustained.

Robey is complaining now because the commonwealth was allowed to undertake to prove that Mason was a quiet, peaceable, timid, mild mannered man before he had made any effort to show what was the reputation

of Mason; but we must remember the circumstances under which the commonwealth was permitted to ask these questions. Robey was testifying in his own behalf and had testified that he had struck Mason to keep Mason from sticking the knife in him. When he did so testify then the commonwealth had the right to interrogate him about his knowledge of Mason's timidity, harmlessness, inoffensiveness, and lack of resentment. Robey and Mason had married sisters. Robey had known Mason for years and had known him intimately, had visited him frequently, and the commonwealth had the right to ask these questions of Robey to test the accuracy of his statement that he believed he was in great danger.

Robey contends that he should have had an instruction under section 240, Criminal Code of Practice. From what we have said above it will be seen that the commonwealth made out its case by proving admissions by Robey made in court and out of court. Robey contends that these were confessions and that it was necessary for the court to instruct the jury under the above section. But if we admit these were confessions it was not necessary to so instruct the jury, because there was plenty of other proof that an offense had been committed. Robey's final contention is that he should have had an instruction on involuntary manslaughter, and he cites the cases of Caudill v. Com., 234 Ky. 146, 27 S. W. (2d) 705; Peal v. Com., 235 Ky. 358, 31 S. W. (2d) 602. But those cases are not applicable. The defendants in those cases did not intend to shoot the parties shot, whereas Robey intended to hit Mason but contends he didn't intend to kill him, thus presenting a state of affairs like that contained in Maulding v. Com., 172 Ky. 370, 189 S. W. 251. Hence he was not entitled to an instruction on involuntary manslaughter.

Judgment affirmed.