RENDERED: MARCH 18, 2010
TO BE PUBLISHED

## Supreme Court of Kentucky

2007-SC-000267-M

DATE 4-8-10 Kelly Klaber D.C.

FREDERICK RENNEL HANNAH                                     APPELLANT

ON APPEAL FROM McCRACKEN CIRCUIT COURT
V.            HONORABLE R. JEFFREY HINES, JUDGE
NO. 04-CR-000459-002

COMMONWEALTH OF KENTUCKY                          APPELLEE

**OPINION OF THE COURT BY JUSTICE SCOTT**

**REVERSING**

Appellant, Frederick Rennel Hannah, appeals as a matter of right from a murder conviction in the McCracken Circuit Court for which he was sentenced to life imprisonment without parole. Ky. Const. § 110(2)(b). He now argues that the trial court erred by: (1) depriving him of his right to present his defenses of self-defense and protection of another by declining to give an instruction that in defending himself and his friend, he had "no duty to retreat"; (2) prohibiting him from questioning the jury pool during voir dire on the "no duty to retreat" rule; (3) prohibiting him from arguing he had "no duty to retreat" in closing argument; (4) prohibiting him from introducing the *entire* video of his police interrogations from which the Commonwealth introduced only selected oral summaries through testimony of the interrogating officer; and (5) allowing the prosecutor to make improper arguments outside the evidence in closing arguments.

For reasons that the trial court erred by prohibiting Appellant from questioning the jury pool as to any prejudices they may have had concerning a duty to retreat during voir dire and by prohibiting him from arguing in his closing argument that he had "no duty to retreat," we reverse on grounds (2) and (3) above. For the benefit of the parties, we will also address such remaining issues as are capable of repetition.

## I. Facts

On October 28, 2004, Appellant and his friends, Undra Ingram, Clarence Ballard, and Keosha McGowen, from Decatur, Illinois, came to Paducah, Kentucky. Late the following night, the group went to a location in Paducah called "The Set," where Andre Grady and his friends, Terry Parker and Antonio Sains, also happened to be. Grady and Ballard had a history of problems.

Grady was carrying a concealed weapon, had been smoking marijuana, and, along with Parker and Sains, had been drinking heavily. Parker saw Ballard and pointed him out to Grady. Grady then headed toward him and approached him from behind. Saying that he was "going to get at" Ballard, Grady pulled his gun and confronted Ballard.

Thereafter, the gun was pointed, from time to time, at both Ballard and Hannah. When Ballard and Grady began to fight, Ballard yelled about Grady's gun and asked Hannah and Ingram to take it away from him. Hannah then intervened and he and Ballard wrestled with Grady to get the gun. The gun fell and Hannah picked it up.

2

Though both Ballard and Hannah told Grady to leave before he was killed, Grady said he "wasn't going out like that" and continued fighting. He was struck and knocked to the ground at various times by both Ballard and Hannah, but got back up each time.

There was conflicting evidence as to whether Grady's acquaintances tried to shoot Hannah during the fray. When Parker was asked if he heard a gun "clicking" *before* Hannah shot Grady, he said he did hear "something." Grady's cousin, Jeremiah Hughes, told police that he ran up to Hannah, trying to fire his gun but it just went "click, click, click" (misfired). However, at trial, he claimed this was only *after* Hannah shot Grady. According to Hannah, however, Grady was still attacking as he backed away and shot him.

Once shot, Grady turned to run, collapsed, and died. Ballard, Ingram, and Hannah then retreated behind a nearby dumpster to avoid being shot by Grady's friends. Several bullets hit the dumpster while the three hid behind it. While there may have been more than one person shooting, it is undisputed that Sains was among those who fired shots. Soon thereafter, McGowen got their van and he, Ballard, Ingram, and Hannah fled back to Illinois.

While in the van, McGowen noticed that Hannah had two guns: one silver and one black. He had seen Ballard with the silver gun earlier that day. At the time, Hannah was praying and banging his head, saying something to the effect that he had shot the boy, and that he was probably dead. When Hannah was arrested in Illinois on November 9, 2004, two handguns—one silver and one black—were found in the basement under a mattress.

3

Although Ballard and Ingram did not testify at trial, Hannah did. He told the jury that Grady approached Ballard from behind and hit him with the gun and that Ballard then grabbed Grady, yelled Grady had a gun, and they fell to the ground fighting. Ballard hollered for Hannah to get the (black) gun and he did. As Grady was getting up, Grady reached for something on the ground and Hannah hit him with the gun. Hannah picked up what Grady had been reaching for, and it was a second (silver) gun. Grady again attacked Hannah and Hannah again knocked him to the ground.

At this point, Hannah heard a gun misfire (click) several times and believed this was one of the men with Grady was trying to shoot him in the back. He turned, but was again attacked by Grady, who was holding something "shiny." Hannah testified that he fired the silver gun because he thought Grady was attacking him in order to divert his attention so that one of Grady's friends could shoot him.

At trial, the medical examiner testified that Grady died of a gunshot wound to the chest. The examiner opined that the wound was consistent with Grady having been shot as he was getting up from the ground.

At trial in November 2006,[1] the court denied Appellant's counsel the right to question the jury regarding the "no duty to retreat" rule during voir dire, denied him the right in closing argument to argue that he had "no duty to retreat," and denied his request for an instruction informing the jury that Appellant had "no duty to retreat."

---

[1] There had been a mistrial earlier in the year.

4

Following closing arguments, the jury was instructed to consider charges against Appellant of murder, manslaughter in the first degree, manslaughter in the second degree, and reckless homicide, along with the usual instructions for self-defense and protection of another—without any guidance to the jury on the duty (or no duty) to retreat. The jury returned guilty verdicts on the charge of murder against Appellant, and second-degree hindering prosecution against Ballard, but acquitted Ingram of "hindering the prosecution." During the penalty phase, evidence was introduced to show that Appellant had a prior murder conviction and he was sentenced to life without parole.

## II. Analysis

## A. Jury Instructions

For a large part of our history, the law in Kentucky was that a person could stand his ground against an aggressor; quite simply, he was not obliged to retreat, nor was he required to consider whether he could safely do so. *Gibson v. Commonwealth,* 237 Ky. 33, 34 S.W.2d 936 (1931). *Gibson,* in fact, quoted from an opinion of the noted Kentucky jurist and United States Supreme Court Justice, John M. Harlan, to wit:

> The defendant was where he had the right to be, when the deceased advanced upon him in a threatening manner, and with a deadly weapon; and if the accused did not provoke the assault, and had at the time reasonable grounds to believe, and in good faith believed, that the deceased intended to take his life, or do him great bodily harm, he was not obliged to retreat, nor to consider whether he could safely retreat, but was entitled to stand his ground, and meet any attack made upon him with a deadly weapon, in such way and with such force as, under all the circumstances, he, at the moment, honestly believed, and had reasonable grounds to believe, were necessary to save his own life, or to protect himself from great bodily injury.

5

*Beard v. United States,* 158 U.S. 550, 564 (1895). "[This] doctrine of the law permeates the opinions of this court, and an instruction [to the contrary] has been condemned in several cases; the more recent one being *Caudill v. Commonwealth,* 234 Ky. 142, 27 S.W.(2d) 705." *Gibson,* 34 S.W.2d at 936. Accordingly, at that time, a defendant was not required to choose a safe avenue of retreat before using deadly force to protect himself in Kentucky. Moreover, the enactment of the 1974 Kentucky Penal Code did not abrogate this view. *Hilbert v. Commonwealth,* 162 S.W.3d 921, 926 (Ky. 2005).

In *Hilbert,* citing to Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 4-2(d)(2) (1998), we noted that "[a] proposal by the drafters of the Kentucky Penal Code to change this rule was rejected by the General Assembly and the right of a defender to stand his ground against aggression was left intact." *Hilbert,* 162 S.W.3d at 926. Notably, "it is [a] tradition that a Kentuckian never runs. He does not have to." *Id.* (*quoting Gibson,* 34 S.W.2d at 936.

However, "[d]espite the defiant attitude towards retreat exhibited by the *Gibson* opinion, Kentucky decisions [over the intervening years] have generally not adhered to such an absolute interpretation of the 'no duty to retreat rule,' nor did our [more recent] predecessor court[s] require jury instructions describing the same." *Hilbert,* 162 S.W.3d at 926; *see also* James M. Roberson, *New Kentucky Criminal Law and Procedure* § 313 (2d ed. 1927) (stating that "the rule now is that whether the assailant should stand his ground or give

6

back is the question for the jury, and that he may properly follow that course which is apparently necessary to save himself from death or great bodily harm."). Thus, Kentucky, in more recent years, has followed "the principle 'that when the trial court adequately instructs on self-defense, it need not also give a no duty to retreat instruction.'" *Hilbert*, 162 S.W.3d at 926 (citations omitted).

However, effective July 12, 2006, and following the occurrence of the crimes charged herein, *but before their trial,* the Legislature amended Kentucky's criminal statues in multiple places to re-insert this long-standing component of self-defense.[2] KRS 503.055(1), as amended, established a presumption, with some exceptions, that a person *has* "a reasonable fear of imminent peril of death or great bodily harm" to himself or others when using defensive force against someone under certain circumstances. The legislation also codified the pre-existing "no duty to retreat":

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has *no duty to retreat* and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

KRS 503.055(3) (emphasis added).

KRS 503.050 was also amended to state that "[a] person does not have a duty to retreat prior to the use of deadly physical force." KRS 503.050(4). Likewise, KRS 503.070 was amended to address the justification of protecting

---

[2] 2006 Kentucky Laws Ch. 192 (SB 38).

another and now recognizes that a person "does not have a duty to retreat if the person is in a place where he or she has a right to be." KRS 503.070(3).

However, in *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky. 2009), this Court held that the substantive provisions of the 2006 self-defense amendments (including those portions dealing with "no duty to retreat") were not retroactive. Therefore, because Appellant's actions giving rise to the murder charge occurred prior to the amendments' effective date, they do not apply in his case. Since, pursuant to *Rodgers*, the 2006 self-defense amendments do not apply retroactively and, pursuant to *Hilbert*, the self-defense instruction the trial court gave to the jury was adequate, the trial court did not err by failing to include a "no duty to retreat" instruction.

## B. Closing Arguments and Voir Dire

However, the right to present a defense is not merely limited to the presentation of the defendant's evidence in support of appropriate instructions by the court. The right also includes the right to be heard in summation, *Herring v. New York*, 422 U.S. 853, 863 (1975), as well as the right to appropriately question the jury as to their obligation to follow and abide by the law to be instructed on by the court during voir dire. *Temperly v. Sarrington's Adm'r*, 293 S.W.2d 863 (Ky. 1956).

In the present case, the trial court allowed the Commonwealth to argue to the jury in closing that Appellant could have withdrawn rather than shoot Grady. However, Appellant was not afforded any opportunity during his closing argument to comment as to whether or not he had a duty to retreat

8

before acting in self-defense. Yet, in *Hilbert,* we recognized that "whether the assailed should stand his ground or give back is a *question for the jury,* and that he may properly follow that course which is apparently necessary to save himself from death or great bodily harm." 162 S.W.3d at 926 (*quoting* James M. Roberson, *New Kentucky Criminal Law and Procedure* § 313 (2d ed. 1927)). Because it is a question for the jury as to whether Appellant should have retreated prior to his use of force, deadly or otherwise, it follows that Appellant should have been permitted to argue to the jury that, under the circumstances of his particular case, he was privileged to defend himself and others without first attempting to retreat. Thus, the trial court erred in prohibiting Appellant's argument in this regard. We must reverse on such ground, as such an error under these alleged facts could not be harmless.

The trial court also erred when it refused to allow Appellant to question jurors during voir dire as to any prejudices they may have regarding whether a person should attempt to retreat before acting in self-defense or in defense of others. "An important test of qualifications of a juror is his willingness to rid his mind of predilections and to be able to conscientiously give to the litigants a fair and impartial trial according to the evidence and the instructions of the court." *Temperly,* 293 S.W.2d 868. "Thus, in practice, counsel should be given a fair opportunity to question the jurors on voir dire to discover whether or not any of the prospective jurors have bias or prejudice in the cases to be tried." Id.

9

"While it is within the discretion of the trial court to limit the scope of voir dire, that discretion is not boundless. Appellate review of such limitation is for abuse of discretion." *Hayes v. Commonwealth*, 175 S.W.3d 574, 583 (Ky. 2005) (*citing Webb v. Commonwealth*, 314 S.W.2d 543, 545 (Ky.1958) (trial court abused discretion by not permitting defendant being tried for the murder of his father to examine jurors on their views concerning patricide and self-defense)). The mere fact that the disallowed questions would have been helpful to the defendant is not enough—rather, "the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." *Id.* (*citing Mu'Min v. Virginia*, 500 U.S. 415 (1991)). "The test for abuse of discretion in this respect is whether an anticipated response to the precluded question would afford the basis for a peremptory challenge or a challenge for cause." *Id.*

Appellant should have been allowed to ask the jurors properly formulated questions to ascertain any bias they may have had on a duty (or no duty) to retreat. Thus, the trial court abused its discretion in disallowing these questions since, under the law at the time of the offense, it was a question for the jury as to whether or not a defendant should have retreated rather than acted in self-defense. Prospective jurors' answers to these questions during voir dire would have certainly "afford[ed] a basis for a peremptory challenge or a challenge for cause." *Id.* Thus, Appellant's trial was rendered fundamentally unfair, warranting reversal.

## C. The "Completeness Rule

Detective Rob Estes testified that Hannah gave five differing versions of what happened the night Grady was shot. In each consecutive version, Hannah moved more "from the general to the specific." Though the tapes were not played, Estes summarized Hannah's differing versions.

At the completion of Estes' direct examination, Appellant first moved to strike his entire testimony under the rule of completeness, with the stated assumption that any questions he asked Estes as to other statements he, Ballard, or Ingram might have made, would violate the rule in *Bruton v. United States*, 391 U.S. 123 (1968). The Commonwealth, however, noted there were no *Bruton* violations in any of the other statements, thus they had *no objection* to Appellant asking Estes about the other statements. Given the Commonwealth's concession, the court did not rule on the motion, but simply noted Appellant could ask whatever questions he desired from the transcripts of the interrogation with the jury present. Rather than proceeding, Appellant, however, *then* chose to reserve cross-examination until later in the trial.

Upon later recall by Appellant, Estes acknowledged that his testimony as to Hannah's statements on direct was not verbatim, but in summary form only as he had interpreted it. He acknowledged that Hannah never actually said that he "pistol whipped" Grady—rather, he simply said that he hit Grady. Moreover, he could not actually recall whether Hannah actually said he heard the "clicks" (misfiring) of a gun *before* Grady was shot, thus backing away from

his prior testimony. He simply noted that it was hard to remember fifty interviews from two years earlier.

In this regard, "[i]t is the duty of one who moves the trial court for relief to insist upon a ruling, and a failure to do so is regarded as a waiver." *Dillard v. Commonwealth*, 995 S.W.2d 366, 371 (Ky. 1999) (*citing Brown v. Commonwealth*, 890 S.W.2d 286, 290 (Ky. 1994), *Wilkey v. Commonwealth*, 452 S.W.2d 420, 422 (Ky. 1970)). Moreover, in this particular case, Appellant's motion to strike shifted into a reservation of cross-examination once Appellant was granted permission to ask the questions he desired. Having received the relief sought, Appellant cannot ask for further relief on appeal. *Hayes v. Commonwealth*, 58 S.W.3d 879, 883 (Ky. 2001); *Parker v. Commonwealth*, 952 S.W.2d 209, 215 (Ky. 1997); *Templeman v. Commonwealth*, 785 S.W.2d 259, 260 (Ky. 1990).

Appellant nevertheless asserts that the motion to strike under the rule of completeness, as well as his motion for new trial on grounds that the trial court prohibited him from introducing the entirety of the statements made to the officers—preserved the issue for the introduction of the full recording. We disagree, as the trial court simply did not deny Appellant the right to proceed with Estes questioning, which was what counsel indicated he wanted to do.

Had the court done so, we note that each party had complete transcripts of the interrogations of Appellant at issue. Thus, what we said in

*Soto v. Commonwealth,* 139 S.W.3d 827, 865-66 (Ky. 2004), will be dispositive

of the issue, should it reoccur:

> KRE 106 provides that when a party introduces a portion of a writing or recorded statement, the adverse party may "require the introduction at that time of any other part ... which ought in fairness to be considered contemporaneously with it." KRE 106 is a rule of admission, not exclusion. It allows a party to introduce the remainder of a statement offered by an adverse party for the purpose of putting the statement in its proper context and avoiding a misleading impression from an incomplete document. Lawson, *supra,* at § 1.20 ("The objective of [KRE 106], in other words, is to prevent a misleading impression as a result of an incomplete reproduction of a statement or document."). It does not require the exclusion of a relevant portion of a document because other portions cannot be found. Furthermore, even if the entire document were available, KRE 106 would require the admission of only that portion which concerns the part introduced by the adverse party. *Young v. Commonwealth,* Ky., 50 S.W.3d 148, 169 (2001). *See also United States v. Littwin,* 338 F.2d 141, 146 (6th Cir.1964) (rule of completeness "is subject to the qualification that only the other parts of the document which are relevant and throw light upon the parts already admitted become competent upon its introduction. There is no rule that either the whole document, or no part of it, is competent." (Citations omitted.)). The real issue is whether the excluded portion alters the portion already introduced. *Young, supra,* at 169; *Commonwealth v. Collins,* Ky., 933 S.W.2d 811, 814 (1996).

However, we also noted in *Schrimsher v. Commonwealth,* 190 S.W.3d

318, 330-31 (Ky. 2006), that "a party purporting to invoke KRE 106 for the

admission of otherwise inadmissible hearsay statements may only do so to the

extent that an opposing party's introduction of an incomplete out-of-court

statement would render the statement misleading or alter its perceived

meaning."[3] We further noted,

---

[3] *Roach v. Commonwealth,* 2006 WL 2986492, 2005-SC-0211 (Ky. October 16, 2006) (unpublished) did not change the considerations under, and application of, KRE 106. The Appellant simply did not present this issue to the court.

13

> This does not mean that by introducing a portion of a defendant's confession in which the defendant admits the commission of the criminal offense, the Commonwealth opens the door for the defendant to use the remainder of that out-of-court statement for the purpose of asserting a defense without subjecting it to cross-examination.

*Id.* Of course, what is relevant is the trial court's decision, one that is reviewable for an abuse of discretion. *Schrimsher,* 190 S.W.3d at 330.

## D. The Commonwealth's Closing Argument

During closing argument, the prosecutor asserted that Grady followed the "code of the street," a notion that one confronts those who wrong him in order to regain their respect, asserting that this was not a deadly code of conduct, and that if Grady wanted to kill Ballard, he would have just walked up to him and shot him. The prosecutor stated, however, that Appellant followed a tougher, meaner "code of the street" where one kills without much thought, if someone challenges his authority. Appellant objected to these statements on the ground that there was no evidence in the record of any "code of conduct" or "code of the street." The Commonwealth responded that it was an argument based upon reasonable inferences from the evidence. The trial court overruled the objection, noting it was an argument and that the prosecutor was merely characterizing the evidence.

If this Court (first) determines that a prosecutor engaged in misconduct in closing argument, reversal is required where "the misconduct is 'flagrant' *or* if each of the following three conditions is satisfied: (1) Proof of defendant's guilt is not overwhelming; (2) Defense counsel objected; and (3) The trial court failed to cure the error with a sufficient admonishment to the jury." *Matheney*

14

*v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006) (emphasis in original) (*citing Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002)); *see also Barnes*, 91 S.W.3d at 568 (adopting Sixth Circuit test); *United States v. Carroll*, 26 F.3d 1380, 1382-90 (6th Cir. 1994) (articulating analysis). The four factors to be considered in determining whether the prosecutor's misconduct was "flagrant" are: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Carroll*, 26 F.3d at 1385 (*citing United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976)). We, however, do not find that the statements in question amounted to misconduct.

Given the context of this case, the prosecutor's remarks were well within the bounds of proper argument. The comments did not infringe upon the jury's ability to judge the facts of the case. It was merely a reference, whereby the prosecutor was attempting to characterize the conduct of the parties according to the evidence. As here, the prosecutor is allowed to draw inferences from the evidence and to argue them to the jury. *Commonwealth v. Mitchell*, 165 S.W.3d 129, 132 (Ky. 2005).

### III. Conclusion

For the reasons set out herein, Appellant's conviction and sentence are hereby vacated and this matter is remanded to the McCracken Circuit Court

15

for such further proceedings as are appropriate and consistent with the opinion rendered herein.

Cunningham, Noble, Schroder, and Venters, JJ., concur. Minton, C.J., and Abramson, J., concur in result only. Scott, J., concurs by separate opinion.

SCOTT, JUSTICE, CONCURRING: Although I heartily concur in the majority's resolution of the other issues, I must state that my concurrence with the majority's opinion on the *non-retroactivity* of the "no duty to retreat" statutes, KRS 503.050, KRS 503.055(1),(3),(4), and KRS 503.040(3), is with a heavy heart, as I truly believe, as I said in *Rodgers*, "it was error *not* to instruct the jury fully [here] on the relevant law regarding the duty. *Rodgers v. Commonwealth*, 285 S.W.3d 740, 766 (Ky. 2009) (Scott, J., dissenting) (emphasis added). And it still amazes me that we expect two (2) opposing lawyers to argue to opposite views of a "point of law" to a jury, which itself, has not been told by the court what the law really is. So much for saying that lawyers should only argue, and jurors should only decide, facts. But, having had my opportunities to convince the Court of my view on the matter, I concur, albeit reluctantly.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane
Suite 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General
Office of the Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, KY 40601-8204