# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 19, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000659-MR

MICHAEL DAVIDSON

APPELLANT

DATE 1/17/20 SSC

V.

ON APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE JEREMY MICHAEL MATTOX, JUDGE
NO. 16-CR-00208

COMMONWEALTH OF KENTUCKY

APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A circuit court jury convicted Michael Davidson of being a felon in possession of a handgun and of being a second-degree persistent felony offender (PFO II). The trial court sentenced him to the maximum of twenty-years' imprisonment.

Davidson now appeals the resulting judgment as a matter of right[1] alleging two errors: (1) the trial court erred in denying Davidson's motion for a directed verdict on the charge of felon in possession of a handgun, and (2) reversible error occurred when the Commonwealth's attorney made statements during closing argument in the penalty phase of trial concerning the nature of

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of . . . imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

Davidson's supervision during two prior probated sentences. We affirm the trial court.

## I. BACKGROUND.

In August of 2016, Davidson fired multiple gunshots toward Samantha Gast's trailer from his SUV. After Gast called 911, an officer received a dispatch and spotted Davidson driving away from the scene. A high-speed chase ensued, and the officer observed Davidson throw a black, shiny object out of his window. The gun at issue, a Glock, model 19 with an extended, thirty-round magazine, was recovered at the scene; and Davidson was eventually apprehended. Davidson was later charged with possession of a handgun by a convicted felon,[2] and the trial was held in August of 2018.

At trial, the jury received instructions on both possession of a handgun and possession of a firearm by a convicted felon. Davidson did not contest the Commonwealth's evidence. Rather, Davidson's sole defense was that the Commonwealth had failed to meet its burden of proving beyond a reasonable doubt that the firearm at issue was a handgun because it "was originally designed to be fired by the use of a single hand" as required by KRS[3] 527.010(5). At the close of the Commonwealth's case, Davidson moved for a directed verdict on the charge of felon in possession of a handgun on the basis

---

[2] Davidson was also charged with murder, multiple counts of wanton endangerment, first-degree fleeing and evading, and tampering with physical evidence, but those charges were severed from the charge of felon in possession of a handgun. This trial concerned only the charge of felon in possession of a handgun.

[3] Kentucky Revised Statutes.

2

that no prosecution witness had testified about how the gun was originally designed, but the trial judge denied the motion.

The jury found Davidson guilty of being a felon in possession of a handgun. In the penalty phase of the trial, the jury heard evidence of Davidson's two earlier convictions—one for trafficking in a controlled substance and the other for two counts of possession of a firearm by a convicted felon, receiving stolen property, a firearm, and trafficking in a controlled substance—for which Davidson received probated sentences. The jury in the present case recommended the maximum sentence of ten years' imprisonment, enhanced as a PFO II to twenty years. The trial court followed the recommendation and imposed a sentence of twenty years' imprisonment.

## II. ANALYSIS.

### A. The trial court did not err in denying Davidson's motion for a directed verdict on the charge of felon in possession of a handgun.

Davidson first argues that that the trial court erred in denying his motion for a directed verdict on the charge of felon in possession of a handgun because there was no evidence the firearm he possessed was a handgun. This error is preserved for our review.

When reviewing a trial court's ruling on a motion for a directed verdict, we turn to the standard outlined in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true but reserving to the jury

3

questions as to the credibility and weight to be given to such testimony.[4]

On appellate review, we must determine whether, given the evidence as a whole, "it would be clearly unreasonable for a jury to find guilt[.]"[5] Only then is a defendant entitled to a directed verdict of acquittal.[6] Further, the Commonwealth need only produce more than a "mere scintilla" of evidence to defeat a defendant's motion for a directed verdict.[7]

As always, the Commonwealth may prove its case by direct or circumstantial evidence.[8] A jury may make reasonable inferences from circumstantial evidence,[9] and while circumstantial evidence must "do more than point the finger of suspicion,"[10] a conviction may be premised on such evidence if, taken as a whole, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt.[11]

Under KRS 527.040(1), "[a] person is guilty of possession of a firearm by a convicted felon when he possesses, manufactures, or transports a firearm

---

[4] 816 S.W.2d 186, 187 (Ky. 1991).

[5] *Id.* (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky. 1983)).

[6] *Id.* (citing *Sawhill,* 660 S.W.2d at 5).

[7] *Sawhill,* 660 S.W.2d at 5.

[8] *Commonwealth v. Goss,* 428 S.W.3d 619, 625 (Ky. 2014) (citing *Commonwealth v. O'Conner,* 372 S.W.3d 855, 857 (Ky. 2012)) ("It has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence.").

[9] *Dillingham v. Commonwealth,* 995 S.W.2d 377, 380 (Ky. 1999) (citing *Blades v. Commonwealth,* 957 S.W.2d 246, 250 (Ky. 1997)).

[10] *Davis v. Commonwealth,* 795 S.W.2d 942, 945 (Ky. 1990).

[11] *Graves v. Commonwealth,* 17 S.W.3d 858, 862 (Ky. 2000).

when he has been convicted of a felony . . . ."[12] The statute goes on to specify that "[p]ossession of a firearm by a convicted felon is a Class D felony *unless the firearm possessed is a handgun in which case it is a Class C felony.*"[13] And the word "handgun" is defined by KRS 527.010(5) as "any pistol or revolver originally designed to be fired by the use of a single hand, or any other firearm originally designed to be fired by the use of a single hand."[14]

Davidson argues that the Commonwealth failed to produce any evidence that the firearm in question was "originally designed to be fired by the use of a single hand" because no one testified about the way it was originally designed. In fact, Davidson notes, a police-officer witness for the prosecution testified that he was trained to use a similar weapon—a Glock, model 17—with two hands. Davidson also notes that it was apparent that the jury struggled with the issue of whether the gun met the definition of a *handgun* because, during deliberations, the jury sent the judge the following questions: (1) "Are there any legal precedents for handgun versus firearm," (2) "What is the official definition of firearm versus handgun," and (3) "what is the sentencing for handgun versus firearm." As a result, according to Davidson, the trial court should have granted his motion for a directed verdict on the charge of felon in possession of a handgun.

---

[12] KRS 527.040(1).

[13] KRS 527.040(2)(a) (emphasis added). The classification of the possession of a handgun as a Class C felony increases the penalty range for possession of a firearm from one to five years to five to ten years. *See* KRS 532.020(1)(a),(b).

[14] KRS 527.010(5).

The Commonwealth argues to the contrary that sufficient evidence existed for a reasonable jury to find that Davidson was in possession of a handgun because twice during the trial one of its witnesses referred to the firearm as a "Glock 19 handgun."[15]

We agree with the Commonwealth that the trial judge properly denied motion for a directed verdict. Despite the absence of direct testimony identifying the firearm as a "pistol or revolver originally designed to be fired by the use of a single hand, or any other firearm originally designed to be fired by the use of a single hand,"[16] sufficient evidence existed such that the jury could reasonably infer that the firearm at issue, a Glock 19, met this definition. Aside from a Commonwealth's witness twice referring to the Glock 19 as a handgun, a review of the record reveals that the firearm was displayed to the jury on multiple occasions and even passed to them for their own hands-on inspection. And the firearm in this case was quite obviously designed to be fired using a single hand, as it is small enough that the entire gun can comfortably fit in and be operated by one hand. Whether this specific firearm was designed to be used with a single hand is well within the common knowledge of jurors.

In addition, although a witness for the Commonwealth testified that he was trained to use a similar weapon with two hands, another witness testified that she was trained to use the weapon with either hand, and Davidson argued at trial and separately in his brief to this Court that whether a firearm *could* be

---

[15] The Commonwealth does not contest that it was required to prove that the firearm at issue was a *handgun* under KRS 527.010(5) as an element of the offense.

[16] KRS 527.010(5).

6

used with one or two hands has no bearing on the design of the weapon. Accordingly, the trial judge did not err in denying Davidson's motion for a directed verdict on the charge of felon in possession of a handgun. Based on this evidence, the jury could reasonably infer that the firearm in question was designed to be fired using a single hand and was therefore a *handgun* under KRS 527.040(1) and KRS 527.010(5).

Davidson nevertheless argues that allowing the jury to infer that the firearm was designed to be used with one hand would be the same as allowing the jury to resort to speculation or conjecture, which is insufficient to prove the elements of an offense. Davidson points us to *Lee v. Commonwealth*, in which the Court of Appeals held that the Commonwealth had failed to satisfy its burden of proving beyond a reasonable doubt that the defendant was guilty of receiving stolen property of a value of $100 or more.[17] In that case, the Commonwealth had failed to put on any evidence establishing the value of the stolen property, two television sets, and instead relied on a witness's testimony that the cost to replace the televisions would be between $300 and $350.[18] The same witness admitted that she had "no idea" of the value of the original stolen televisions.[19]

The court found that the Commonwealth had fallen short of meeting its burden of proving beyond a reasonable doubt that the stolen property was

---

[17] 547 S.W.2d 792, 793–95 (Ky. App. 1977)

[18] *Id.* at 795.

[19] *Id.*

worth $100 or more.[20] The court explained that there was "no direct proof here as to the market value of the stolen property, nor [was] there sufficient descriptive testimony and exhibits which would enable a jury to make an informed conclusion as to value."[21] Despite being shown pictures of the stolen televisions, the court noted that the pictures "reveal[ed] little about the condition of the television sets or even the exact size of their screens," and that at no time was the jury advised as to whether or not the sets were in working order, "one of the most important factors necessary to determine the value of the television sets."[22]

We find Davidson's reliance on *Lee* unpersuasive. Unlike asking a jury to speculate about the value of a television set, despite hearing no evidence about the condition, size, or whether the television even worked, allowing a jury to infer that a firearm, which is clearly small enough to be comfortably held and operated by a single hand was "designed to be fired by the use of a single hand" would not require impermissible speculation. Instead, this matter is well within the common knowledge of jurors, and the proof offered was sufficient to establish beyond a reasonable doubt that the firearm in this case is a handgun. Accordingly, we find no error in the trial judge's denial of the motion for a directed verdict on the charge of possession of a handgun by a convicted felon.

**B. The Commonwealth's attorney's comments during closing arguments of the penalty phase concerning the nature of Davidson's prior probation supervision does not warrant reversal.**

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

8

Davidson next asks us to reverse his sentence and remand his case to the trial court for a new penalty phase because of allegedly improper statements made by the prosecutor exclusively during closing arguments of the sentencing phase of his trial. Specifically, Davidson argues the prosecutor's following statements constituted facts that were not introduced into evidence during trial proceedings and therefore amounted to prosecutorial misconduct:

> The court sought fit to put him on felony probation. What does that mean? The Probation Office is working with him, they're trying to make sure he gets a job, they're trying to make sure he stays out of trouble, and they're trying to help him walk the right path. They already tried working with him.
>
> . . .
>
> Once again, the court showed great leniency. He received a sentence of two years and the court saw fit to put him on supervised probation, the court system gave him a second chance. It showed him great leniency by giving him probation. Hey, we're gonna work with him, we're gonna try to get him to straighten up, we want him to walk the right path, hold an honest job, don't break the law. Well that didn't work.

As Davidson points out, while the jury was presented with evidence of Davidson's prior convictions and probated sentences during the penalty phase, the Commonwealth presented no evidence showing that the probation office had worked with him and tried to make sure he got a job and stayed out of trouble or that the office had tried to help Davidson "walk the right path," "straighten up," and not "break the law."

9

Davidson concedes that the alleged error is unpreserved and therefore requests palpable error review under RCr[23] 10.26. Palpable-error review allows reversal only when "manifest injustice has resulted from the error."[24] Such an injustice occurs when there is a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law."[25] "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[26]

While a prosecutor is not permitted to tell jurors about facts that were not introduced into evidence during the trial proceedings,[27] in the context of palpable-error review of alleged instances of prosecutorial misconduct in the penalty-phase closing arguments, the bar for reversal is quite high. This Court has outlined the applicable standard as follows:

> An appellate court's review of alleged error to determine whether it resulted in "manifest injustice" necessarily must begin with an examination of both the amount of punishment fixed by the verdict and the weight of evidence supporting that punishment. Other relevant factors, however, include whether the Commonwealth's statements are supported by facts in the record and whether the allegedly improper statements appeared to rebut arguments raised by defense counsel. Finally, we must always consider these closing

---

[23] Kentucky Rules of Criminal Procedure.

[24] RCr 10.26.

[25] *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

[26] *Id.* at 5.

[27] *See Holt v. Commonwealth*, 219 S.W.3d 731, 732, 737–38 (Ky. 2007) (explaining that a prosecutor is not permitted to make statements of fact outside of the record of evidence).

10

arguments "as a whole" and keep in mind the wide latitude we allow parties during closing arguments.[28]

After examining the record, we hold that Davidson did not suffer "manifest injustice" because of the prosecutor's statements, even assuming the statements exceeded the bounds of proper argument. While the jury did recommend the maximum sentence of twenty years, the Commonwealth introduced overwhelming evidence that Davidson not only possessed a handgun while being a felon, but also fired multiple shots into an occupied trailer home. The jury also heard evidence during the penalty phase that Davidson had twice received a probated sentence—once for trafficking in a controlled substance and again for possession of a firearm by a convicted felon, receiving stolen property, a firearm, and again for trafficking in a controlled substance—something the jurors would quite clearly interpret as an act of goodwill toward Davidson even without the prosecutor's comments that the Commonwealth had tried "to help him walk the right path" or worked with him to make sure "he gets a job" and "stays out of trouble" during probation. And the full text of the Commonwealth's penalty-phase closing argument shows that the Commonwealth was trying to send the message that Davidson had

---

[28] *Young v. Commonwealth*, 25 S.W.3d 66, 74–75 (Ky. 2000) (citations omitted). Davidson points us to the four-factor test for determining whether prosecutorial misconduct has occurred during closing arguments, as stated in *Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky. 2010). But that test is used to determine whether prosecutorial misconduct had occurred during closing arguments of the *guilt phase* of the trial. *See id.* Instead, the correct test for determining prosecutorial misconduct under the palpable error standard in closing arguments of the *sentencing phase* is outlined in *Young. See Young*, 25 S.W.3d at 74 ("Accordingly, we feel it appropriate to examine the criteria relevant for palpable error review of alleged instances of prosecutorial misconduct in sentencing phase closing arguments.").

11

been given multiple lenient sentences after being convicted of similar crimes, but he had still failed to learn his lesson—again something the jury would have inferred even without the comments about the nature of his probated sentences.

Even further, KRS 532.070(1) leaves the final determination regarding sentencing up to the trial court, and the trial judge accepted the jury's recommendation of twenty years.[29] Although KRS 532.070(1) "does not insulate all sentencing phase errors from palpable error review, we believe Kentucky's sentencing procedures provide an additional layer of protection from prejudice which we should consider in the context of RCr 10.26 review in this case."[30] Because of the above considerations, we simply do not believe the prosecutor's comments in the penalty-phase argument rose to the level of manifest injustice or rendered the penalty phase unfair. Accordingly, we affirm the trial court's sentence of twenty (20) years' imprisonment.

### III. CONCLUSION.

For the foregoing reasons, we affirm the judgment of the trial court.

Minton, CJ, Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. Nickell, J., not sitting. All concur.

---

[29] KRS 532.070(1) provides the following:

> When a sentence of imprisonment for a felony is fixed by a jury pursuant to KRS 532.060 and the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that the maximum term fixed by the jury is unduly harsh, the court may modify that sentence and fix a maximum term within the limits provided in KRS 532.060 for the offense for which the defendant presently stands convicted.

[30] *Young*, 25 S.W.3d at 75.

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General

Gregory C. Fuchs
Assistant Attorney General